## 10710.

### McIVER v. THOMPSON *ET AL.*

(108 S. E. 411)

1. Judicial Sales—Objections May be Made Until Sale Is Confirmed.—When a judicial sale is ordered by Court, it is the duty of the person empowered to execute the deed to file a report of the sale showing compliance with the order, which report must be confirmed by the Court in order to make the deed valid, and until that is done parties to the action may object to confirmation.

2. Judicial Sales—Confirmation Relates Back and Cures Irregularities Not Jurisdictional or Based on Fraud.—Confirmation of sale gives the sale judicial sanction and relates back to time of sale, and cures all defects and irregularities not jurisdictional or founded on fraud.

3. Infants—Guardian ad Litem to Defend Should Act as He Might Act For Himself.—A guardian ad litem should look after the infants' interest and act for them in the suit as he might act for himself, and make as vigorous a defense as the nature of the cause permits after acquainting himself with the rights of his wards.

4. Infants—Where Rights of Infants Were not Protected in Manner Required by Law, Sale of Their Land by Judicial Decree Will Not be Confirmed.—Where it was not the intention of any of the parties to the sale of land belonging to infants that the infants were to receive any money or benefit, but that the proceeds of the sale were to be used to satisfy indebtedness incurred on mortgage for which the infant remaindermen were in no way liable, and that the rights of the infants were not protected by their guardian ad litem in the manner required by law, a sale of their land by judicial decree in a former action will not be confirmed.

5. Infants—Purchaser, Examining Records Not Showing Confirmation of Judicial Sale of Infants' Land is Not Purchaser For Value Without Notice.—Where purchaser bought land belonging to minors after an examination of the records, which did not show that a sale made under judicial decree by their guardian who was also their guardian ad litem had been confirmed the purchaser is not entitled to the protection of a purchaser for valuable consideration without notice.

Before Wilson, J., Marlboro, Spring term, 1920. Reversed and remanded.

Action by Jno. K. McIver against Fannie M. Thompson, Corrie Malone, Elise Stewart, and Lucy M. Thompson, and Scott Lumber Co., for partition. From judgment for plaintiff the defendants, other than Scott Lumber Co., appeal.

The following is the decree of the Circuit Judge:

This matter comes before me on the report of the Special Referee, exceptions thereto by both sides, and a motion made by the Thompson heirs in the original cause of Bridgers & McKeithan Lumber Company, plaintiff, v. Fannie M. Thompson et al., to open said judgment in such former case. The action here is for partition, and by the pleadings as originally framed presented a two-sided contest between John K. McIver and the Thompson heirs on the one side, and the Thompson heirs and the Scott Lumber Company on the other. During the pendency of this action, and before its decision by the Referee, the Thompson heirs abandoned their contest against the plaintiff, John K. McIver, thereby narrowing the issues to those between the defendants, the Thompson heirs and the Scott Lumber Company. As the Referee rightly says, "In justice to the plaintiff, J. K. McIver," it should be said "that the testimony shows that there was no basis for the allegation made in the answer of the Thompson heirs, that there should be an accounting, as no money went into his hand for which he was liable which he did not pay over to them. The testimony further shows that the sale about which this controversy centers was negotiated by Col. H. T. Thompson, the father of the Thompson defendants, while the plaintiff in this case was living in Moultrie, Ga., and that he had nothing to do with the sale, further than to execute a deed to his one-half interest in remainder in the timber in order to pay the mortgage on the place for which he and others were liable." Here I refer to the mortgage to L. M. Davis.

The lands involved consist of about 3,000 acres in Marlboro County, of which 1,200 to 1,500 acres, most of it in

swamp, are timber lands; and a tract of ———acres in the county of Chesterfield. The fee to both these tracts is vested the one-half in John K. McIver, and the other half in equal proportions in the Thompson heirs; but the issues between the Thompson heirs and the Scott Lumber Company concern only the Marlboro County tract. In 18———, I. D. Wilson and his wife, then the owners of the Marlboro County lands, conveyed the same by deed to their daughter, Hannah J. McIver, for life, and at her death to her children; the child or children of a deceased child to represent the parent. Hannah J. McIver had two children, to wit, John K. McIver and Fannie McIver. Fannie married Henry T. Thompson, died 18———, leaving four children to wit, Fannie, Corrie, Eliza and Lucy—the ones mentioned as defendants in this present action with the other defendant, Scott Lumber Company, against which corporation they file their cross-action. The life tenant, Hannah J. McIver, died A. D. 1916, and John K. McIver, her child, is still living and is the plaintiff in this action. Before the death of Fannie, she, her mother, Hannah J. McIver, her husband, Henry T. Thompson, and her brother John K. McIver, all joined in the execution of a mortgage to one Mrs. L. M. Davis. Thereafter, the income of the family being small and less than its needs, it was agreed that J. K. McIver should take charge of the place and farm for the purpose and benefits of the family. These farming operations were not successful, and another mortgage was given to one Salinas & Sons to secure the said advance for such operations. In 1902 the Bridgers & McKeithan Lumber Company made a contract with Hannah J. McIver and John K. McIver for the purchase of their rights in the timber on the lands, and received from them a deed to such interest. The contract price for the timber on the entire tract was $1,650. At the times of this contract and the deed from Hannah J. and Jno. K. McIver, Fannie Thompson was dead, so that it became necessary to obtain an

order of Court to pass the interest of her children, which children owned a one-half vested interest in remainder in said lands and timber. Jno. K. McIver and his mother made deed as aforesaid, and a suit was brought by the Bridgers & McKeithan Lumber Company, as plaintiff, by their attorney, T. W. Bouchier, now deceased, against the four children of Fannie Thompson, who at the time were all minors, alleging the deed from Jno K. McIver and his mother, and the price to be paid, $1,650; that such was the fair market value of the timber; that it was to the benefit of the minors that the proposed sale be made; that the adults interested were satisfied with the price; that there was a mortgage on the lands that must be paid; and ended with the usual prayer for relief. The following is the allegation of the complaint in such former action with which the Thompson heirs find fault: "These plaintiffs are informed that there is a mortgage on said property, the same having been executed by the life tenant and remaindermen to Mrs. L. M. Davis, during the lifetime of Mrs. Fannie McIver Thompson, and that a portion of said purchase money is to be used in liquidating said mortgage. The plaintiff further alleges that the cash paid for the said timber will be of more benefit to the said minors than to leave the said timber in its present condition; that the funds so paid, reinvested, will amount to more than the value of the timber at the time they arrive at full age, should the same increase in value."

The summons and complaint in the original case are now on file, recorded and attached thereto is the usual notice to minors, except that such is not addressed to any particular person, or persons, while the return of service made on a blank form on the back of the summons refers only to the service of the summons and complaint, and is silent as to the service of this notice. Service is accepted on back of original by H. T. Thompson, the father of the children. The oldest child, Fannie, being the

only one over 14 years of age, duly petitioned for the appointment of H. T. Thompson, her father, as her guardian ad litem, and the father petitioned himself for his own appointment as guardian ad litem for his other three children. He was accordingly so appointed, and the case was referred to a special referee, who held reference and reported his conclusions of law and facts. The referee held that $1,650 was the fair market value of the timber; that it was most for the benefit of the minors that the timber be sold; that the plaintiff should have twenty years within which to remove said timber, and recommended that "the guardian ad litem, who is the father of the defendants" (the Thompson heirs), "be authorized and empowered by this Court to convey, by way of deed, to the Bridgers & McKeithan Lumber Company, the interest of said remaindermen in the timber on the terms and conditions mentioned in the complaint, and that upon the payment of the said sum of $1,650 by the Bridgers & McKeithan Lumber Company to the parties in interest that the said deed be delivered." Judge Klugh, in confirming this report, ordered that the said "Henry T. Thompson, Esq., guardian ad litem of the infant defendants, Fannie McIver Thompson, Eliza Cornelia Thompson, Lize Clarkson Thompson, and Lucy McIver Thompson, be, and he is hereby, authorized and directed to execute and convey to the Bridgers & McKeithan Lumber Company, a corporation, the interest of the defendants above mentioned as remaindermen in the timber on all the lands mentioned and described in the complaint designated and known as the Red Hill Plantation, in Marlboro County, upon the said Bridgers & McKeithan Lumber Company paying to the life tenant and the remaindermen the sum of $1,650."

The complaint in this action could have been better drawn, could have set out that the Thompson heirs had only a one-half interest in remainder and asked for a partition of the $1,650 and a determination of the correct

proportions coming to the said children; but that it did not do so, referred to the trade as a whole, and alleged all facts as if the adults who had given their deed were also before the Court—certainly constitutes no vice in the pleadings or judgment and cannot go to the question of jurisdiction as claimed by the Thompsons. The complaint did not ask as contended by the Thompson heirs, nor was it so construed by the Court, as shown by its final order, that their money to be taken for the payment of the debt of others, but alleged the transaction as a whole, and stated what was a fact, there was a mortgage on the lands to Mrs. L. M. Davis to be paid before a good title could be given. This was true, and Jno. K. McIver swore that he expected to get none of the money, but for his portion to be paid on the amount due. In fact, the referee, and certainly the Circuit Judge, were careful to protect the interest of the remaindermen and to provide that the money be paid to the parties in interest, or, as the Circuit Judge decreed, "to the life tenant and the remaindermen." There is nothing in the judgment, or in the record of the case, to show that it was contemplated that the interest of the minors should be taken for the payment of the debts of others, where the order of the Circuit Judge and the report of the Referee is conclusive that the intention was to preserve the interest of the minors in the proceeds of timber sale, and that their interest should be paid to them. As held by the Referee, the Circuit Judge could do nothing else. The Court had jurisdiction, all parties were before the Court, a final order, from which there was no appeal, was issued, and the case had remained on record for 18 years. This judgment is a verity, and there is no vice therein, and is a judgment forever conclusive as to all issues therein raised and res adjudicata as to all parties before the Court on all such matters. It has been found by the special Referee that the $1,650 was at the time a full and fair price for the timber. I concur in this finding, but even if such were not so (and I think there can be no two opinions

in regard to the same under the testimony), inadequacy of price is not alone sufficient to set aside a judicial sale. I do not see how I, acting as a chancellor in a Court of Equity, could, under all the facts of this case, agree to reopen the judgment at this time, and this regardless of the fact that this action was begun over two years ago when the Thompson heirs stated in their answer to the complaint that the case should be stayed until they could make a motion in the original cause, which motion they failed for two years to make, and while the time for cutting was running against the Scott Lumber Company, which had paid its money in good faith; and regardless, also, of the fact that such notice in the original cause, when served, was served only on the Scott Lumber Company a few days before the hearing of this case and no effort was apparently made to bring in the Bridgers & McKeithan Lumber Company, the original purchasers.

. I hold the judgment in the case of Bridgers & McKeithan Lumber Company v. Fannie M. Thompson et al., is good, valid, effectual, and subject to neither direct nor collateral attack.

But this does not dispose of what the Referee properly terms the pivotal point in the case, that is, is the deed from H. T. Thompson, as guardian ad litem of the Thompson heirs, to the lumber company valid? On all other questions decided by the Referee I concur in his holdings and confirm the same for the reasons given by him. In this I think the special Referee is in error, and so hold.

In holding that this deed was not good, the Referee bases his conclusions on the undoubted principle of law that where "the Court has made an order of sale, of which a notice is to be given by advertising for a given time, such direction as well as the other terms become the law of the case. It becomes the condition on which the authority is to be exercised, the non-performance of which will destroy the power." I have considered this case as if such

principle of law were applicable to this case, and am basing my conclusions herein on such authority, though I cannot but have some doubt whether the failure to advertise for 21 days, or the failure to do some other act, could be proven after eighteen years had elapsed against a subsequent innocent purchaser for value by evidence extrinsic of the records under which he purchased. The Referee held that the conditions precedent to the making of the deed by the guardian ad litem were not complied with because the money was not paid to the parties in interest in said suit; that is, to the remaindermen, the Thompson heirs, as provided by the order. Was it? I think so, and must so hold. It could only be paid into Court or to their general guardian.

Henry T. Thompson was the general guardian of his four children, regularly appointed by the Judge of Probate for Darlington County in 1898, qualified, gave bond, and has never been discharged. His eldest daughter, the only one who testified in this case, swore that he was their guardian, that she knew it, but had never called on him for an accounting. The records do not show how the money was applied, except for $774 paid into Court and practically all applied to the Davis mortgage, the only one mentioned in the complaint. The deed from Henry T. Thompson, as guardian ad litem, acknowledged receipt of the payment of the full amount, and he was enjoined by the order of the Court in this very case not to make the deed until the money had been paid to these minors. Mr. Bouchier is dead. Mr. McKeithan, the president of the Bridgers & McKeithan Lumber Company at the time of the transaction testified as to how he thought the money had been applied; but his statements are contradictory, though he seems certain that to whomsoever the check might have been made payable it was delivered to Henry T. Thompson, who, with his children, were living at the time in Darlington with Hannah J. McIver, the life tenant. Mr. McKeithan is a resident of Darlington County. Henry T. Thompson, in

such county, was appointed and there qualified as the general guardian of his four children. Mr. Bouchier attended to the suit in Marlboro County, and it is doubtful whether the plaintiff ever saw any of the papers in the original suit other than his original complaint, yet the Referee holds that because in his application to be appointed the guardian ad litem in this suit he stated they had no general guardian, that the Bridgers & McKeithan Lumber Company dealt with him as guardian ad litem alone. It seems to me that the facts are the other way. Fannie Thompson also stated in her petition for the appointment of a guardian ad litem that she had no general guardian, but testified that she knew her father was her guardian and her father a lawyer; both the natural and legal guardian of his children, and their guardian ad litem in this case, the man who negotiated the entire trade, closed it up, represented his children, lived with the life tenant, the man who was liable on the Davis mortgage, did not appear as a witness. He who, above all others, would know as to the application of the funds, how he dealt and was dealt with; he who apparently furnished letters to his children to use in their cross-action against Jno. K. McIver, which cross-action they abandoned; he who under his hand and seal acknowledged the receipt of the money and caused such receipt to be spread on the records of Marlboro County after having been directed to do so only after the money had come into his hands, or the hands of others as the guardian of his children—does not appear to testify in the suit of his children when it is only reasonable to believe that he was familiar with every detail of it, must have realized the importance of his testimony and had full opportunity to find out that Mr. McKeithan had testified that the money or check had been turned over to him. Yet, Col. Thompson, who did not testify, is a licensed attorney and living in the State of South Carolina. We are in equity. Persons coming in this Court must do so with

clean hands. The one person who could set at rest all questions as to who he dealt and was dealt with refuses, or fails, to be sworn as to his relations in a fiduciary capacity with his own children. Even if it were a fact that he stood by and approved the application of this money which was in his hands and under his control, and allowed it to be diverted and paid on the debts of others, I could not escape the conclusion that he, as their father, their natural and legal general guardian, intended to assume, and did thereby assume, the obligation to account to his children for such fund, and perhaps has accounted by expenditures from his own funds for their benefit for all so received. But being satisfied as I am that the purchase price was paid by the purchasers to Henry T. Thompson, the natural guardian, the general guardian and the guardian ad litem of the children, the Thompson heirs, and that the terms of the order have been complied with, I could not feel justified in refusing to confirm the said sale, and the same is hereby confirmed.

The Scott Lumber Company are subsequent purchasers. They purchased only after an examination of the records. Some faith and credit must be given to the records provided by the Legislature and the judgments of the Courts of this State. I hold that the Scott Lumber Company are subsequent purchasers for value, that the money was paid in accordance with the conditions of the former order, and that the deed from Henry T. Thompson to the Scott Lumber Company is good and valid.

But even if I am wrong in this, how can it be said that the judgment in the case of the Bridgers & McKeithan Lumber Company v Fannie M .Thompson et al. is not good? The only thing about it and the entire transaction that can be even assailed is the deed. The judgment is res adjudicata as to all matters raised, passed on, or determined. The terms of Judge Klugh's order are specific. The guardian was authorized and also directed to execute a

proper deed to the Bridgers & McKeithan Lumber Company Under such order it was the duty of Thompson, as guardian ad litem, to execute and convey the interest contemplated in the order by a proper deed, and not to deliver the deed before the payment to the proper party. Until this was done the Bridges & McKeithan Lumber Company could not be forced to pay. If payment was not made properly, it was because of an honest mistake on their part, and as was said in the case of *Tompkins v. Tompkins,* 39 S. C., 537; 18 S. E., 233, relied on by the Thompson heirs:

"Now, if there is one thing over others in our system of jurisprudence that merits the commendation of all, it must be the flexibility of the principles adopted by Courts of Equity, by which they are made to subserve the needs of each particular case. Ought not those principles to be applied here? It seems so to us. Under our law, William Parks, by being a successful bidder at the sale provided for by a decree in this cause, has to a certain extent become a party to this action. His money has been paid into Court and used for the purposes of this action, under an honest mistake, it is true. Only one party seeks any relief against him. The Circuit Judge orders a new sale, without any provision being made for his (Parks') protection. This is error and must be rectified."

And in this case just cited the Supreme Court went as far as it could possibly go to protect the purchaser. The only reason that the sale was not confirmed without a further sale was that the statute and the order required a notice of 21 days, and the purpose of the sale by such method and at public auction was mandatory to fix the price. Here not only was the statute not mandatory, but $1,650 was the only price that could be obtained, or that could be paid because that was and is res adjudicata as to the parties, and the infants could receive their portion thereof and none other. Under no view of the case could

the portion of the Thompson heirs have been more than one-half, or $825. As stated before, resale cannot be ordered, for the price has been adjudicated as well as the fact that the conveyance must be by private sale and to a particular person, a party to the original action who acquired rights thereof and whose rights were adjudicated. The only thing the Thompson heirs could now do would be to object to the confirmation of the sale—there having been no confirmation thereof to this day. The case of *Tompkins v. Tompkins,* supra, is, indirectly, authority also for this. They are in a Court of Equity and yet, instead of following this, the proper procedure, they seek to obtain all of the benefits and impose upon the successor in title to the Bridgers & McKeithan Lumber Company all of the hardships of the case. If the matter were now before me on objection of the Thompson heirs to the confirmation of the sale, I do not see how, as the chancellor in a Court of Equity, even if the terms of the order in this former case had not been complied with, and the money had not been paid because of an honest mistake, anything could be done other than to require the execution of another deed to the Scott Lumber Company upon the payment of the sum of $825 with legal interest thereon from the date of the execution of the other deed. But being satisfied as I am that the purchase price was paid by the purchaser to Henry T. Thompson, the natural, the general guardian, and the guardian ad litem of the Thompson heirs, and that the terms of the order have been complied with, I confirm the said sale.

The plaintiff's complaint prays that the partition of the lands be had in such way as to portion both the tracts of land and timber in equal parts between the plaintiff and the defendants Thompson. Under the facts and holdings herein it is clear that the plaintiff is entitled to such partition

It is therefore ordered, adjudged, and decreed that a writ of partition do issue from this Court in the usual form directed to five commissioners to be chosen in the usual way, that is to say, two by the plaintiff, two by the defendants Thompson, and one by the Clerk of the Court; and that said commissioners do proceed with calling to their assistance a surveyor, if one be necessary, and divide the tract of land in Marlboro County into two equal parts, regard being had to the value of the land without timber, and not as to quantity; and that the tract of land in Chesterfield County be divided into two equal parts in the same mode and manner, and that they set apart and allot to the plaintiff the one-half of each of the tracts of land, and to the defendants Thompson the other half of the two tracts of land.

Ordered, further, that in making such partition of the said lands that the partition be made in such way as to divide both the arable and the timbered lands in equal proportions in so far as the same is practicable.

Ordered, further, the fee of the special Referee which I fix at $400, be paid one-half by the Scott Lumber Company and the other half by the Thompson heirs; and that all other costs be paid by the three parties in equal proportions the Thompson heirs being collectively referred to as one party. I tax the two defendants with the Referee's costs inasmuch as they alone are directly concerned in the issues submitted to him.

## Exceptions.

(1) The Court erred in not opening and setting aside the judgment and sale when it appeared that the purpose of the action was to sell the property of the infant defendants and apply the proceeds to debts of others, and that they were so applied, and when there appeared no adequate reason for the sale, and it appeared to be, and was, detrimental to the interest of the defendants, and the Court had no power or jurisdiction to render such decree.

(2) The Court erred in not opening and setting aside the judgment and sale when it appeared that the appointment of the guardian ad litem was irregular, and that substantial injustice was done to the infant defendants.

(3) The Court erred in holding that the money to be paid was a full and fair price for the infants' property.

(4) The Court erred in not setting aside the judgment and sale, when no provision was made for the division of the proceeds nor for the preservation of the property of the infant defendants, and that it was intended that the proceeds were to be and they were actually devoted to paying obligations which the defendants were not concerned in, and that the infant defendants got no part of the proceeds.

(5) The Court erred in not setting aside, but, on the contrary, in confirming the deed, when the conditions precedent to the power to execute it prescribed by the decree, were not complied with, and when it was based on a void judgment and was not executed as required by the judgment.

(6) The Court erred in overruling the finding of the referee that before the deed to the plaintiff, lumber company, could be affirmed, they must have paid the parties in interest, and in setting it aside when it appeared that they had not done so.

(7) His Honor erred in holding, if he meant so to hold, that J. K. McIver paid the Baker mortgage.

(8) His Honor erred in holding that the Salinas mortgage was incurred for the benefit of the family with the inference that it was for the infant defendants, when there is no testimony on which to base such a holding.

(9) His Honor erred in overruling the holding of the referee that the lumber company did not deal with Col. H. T. Thompson as guardian ad litem, and that he was functus officio.

(10) His Honor erred in holding that the appellants did not come into Court with clean hands, because Col. Thompson did not testify in the case.

(11) His Honor erred in holding that if Col. Thompson stood by and allowed funds of the infant defendants to be diverted to the debts of others, it must be inferred that he intended to account to the infants, and that therefore they are bound, when such is not the law, and the testimony is that he did not have control of any such funds, and that the lumber company was charged with the payment thereof to the parties in interest.

(12) His Honor erred in holding that the predecessors of Scott Lumber Company failed to pay the money decreed to be paid as a precedent condition under a mistake when there is no evidence thereof.

(13) His Honor erred in holding that it would be equitable to order the conveyance now upon payment to appellants of $825, when not only was this question not before him, but it would be inequitable—more than a reasonable time having elapsed.

(14) His Honor erred in holding, if he meant to hold, that the Scott Lumber Company was a subsequent purchaser without notice, when they knew, or should have known, all the facts, and that the purchase money had not been paid to the infants.

(15) His Honor erred in not holding that the granting of railroad privileges at all was void, because it went beyond the scope of the action, and was without consideration.

(16) He further erred in holding that the right to build more than one railroad was in fact allowed in the decree or granted by the deed.

(17) He erred in overruling the referee's recommendation as to partition, and in requiring the Marlboro land to be divided in two parts, without regard to the value of the timber, when, even if appellants' claim that the deed

to the lumber company is void is not sustained, still there is no question that there are five tenants in common in the land, and there is timber on the land owned by all of said tenants, and that as to the Chesterfield land there is no question of the timber belonging to any one else.

*Messrs. McColl & Stevenson,* for appellants, cite: *Payment of purchase money to guardian was condition precedent and must be proven:* 88 S. C. 188. *Facts in the record rebut presumptions arising from existing judgment:* 25 S. C. *Infant not bound by admissions of guardian ad litem unless for its benefit:* 15 Enc. Law (2nd Ed.) 11, 12. *Scott Lumber Co. not a bona fide purchaser without notice:* 98 S. E. 850; 23 Enc. Law 479; 14 S. C. 318. *Deed not executed in accordance with order and void:* 108 S. C. 305; 19 S. C. 292. *And they took with notice of whatever the record apprised them:* 108 S. C. 305; 22 S. C. 32; 4 Am. Law Rep. 1570, 175 Pac. 42. *Agreement by third party with a guardian to apply funds of infants improperly places third party on same footing as guardian:* 45 S. C. 334. *Duty of Courts in connection with infants' rights in trusts:* 112 S. C. 284, 99 S. E. 804; Const., Art 1, Sec. 17; 94 S. C. 180-1. *Use of money to discharge liens against timber for which infants were not liable was beyond the jurisdiction of the Court:* 16 R. C. L. 7; 8 How. 495, 12 L. Ed. 1170, 127 Am. St. Rep. 684: *Judgment beyond the scope of the pleadings is void:* 15 R. C. L. 604; 71 S. C. 442; 48 S. C. 130. *Grant of railroad rights was not warranted by the pleadings, nor was it incidental to the relief sought:* 1 Hill Eq. 302; 99 S. C. 170. *In conflict between general and specific statements the specific control;* Sec. 322, Code Proc. 1912. *Substantial injustice to infants sufficient to warrant Court in setting aside judgment:* 71 S. C. 21.

*Messrs. Towsend & Rogers,* for Jno. K. McIver; *W. P. Pollock* and *S. S. Tison* for Scott Lumber Co. *Mr. Tison* cites: *Court had jurisdiction of subject matter and parties*

*were properly before it, and sale was valid*: 3 S. C. 323;
31 S. C. 239.; 25 S. C. 412; 25 S. C. 280. *Purchasers at
judicial sales must make inquiry as to jurisdiction of Court
and parties to suit*: 16 S. C. 282. *Partition in Probate
Court was prior to decision in* 10 S. C. 317; *but valid
under* 18 S. C. 339. *Secret vice in proceeding will not in-
validate sale*: 24 S. C. 398; 41 Cal. 247. *Rights of bidder
at judicial sale*: 9 Rich. Eq. 392 S. C. 537. *More than
amount due children was paid into Court*: 53 S. C. 350.
*Judgment is not subject to direct or collateral attack*: 13
S. C. 90, 3 S. C. 191. *Grant was within terms of prayer
for relief*: 10 Rich. Eq. 53; 25 Cyc. 797-C.

September 20, 1921.

The opinion of the Court was delivered by Mr. Chief
Justice Gary.

The facts herein are fully stated in the decree of his
Honor the Circuit Judge, which, together with the excep-
tions, will be reported.

The appellants also made a motion in the original cause
to open the judgment and set aside the sale, which motion
was heard by his Honor, Judge Wilson, at the same time
he heard the present case, and refused.

The first question we will consider is whether there was
error in refusing said motion.

In his decree his Honor, the Circuit Judge, says:

"The only thing the Thompson heirs could now do
would be to object to the confirmation of the sale—there
having been no confirmation thereof to this day. * * * Be-
ing satisfied as I am that the purchase price was paid by
the purchasers to Henry T. Thompson, the natural, the
general guardian and the guardian ad litem of the Thomp-
son heirs, and that the terms of the order have been com-
plied with, I confirm the said sale."

His Honor, the Circuit Judge, very properly con-
1, 2 sidered the motion upon the merits . When a sale
of land is ordered by the Court, it is the duty of

the person empowered by it to execute the deed, to file a
report of sale, showing that he has complied with the re-
quirements of the order. It is then necessary that there
should be an order of the Court confirming the report of
sale. It is the order of confirmation that gives validity to
the deed. Until these several steps are taken, the proceed-
ings do not become res adjudicata, so as to prevent parties
to the action from interposing objections to the confirm-
ation of the sale. *Kibler v. McIlwain,* 16 S. C. 550. "The
order of confirmation gives to the sale the judicial sanction
of the Court, and when made it relates back to the time of
the sale and cures all defects and irregularities, except
those founded on one of jurisdiction and fraud." *Con-
nor v. McCoy,* 83 S. C. 165, 65 S. E. 257.

While we recognize the fact that his Honor, the Circuit
Judge, had the power and authority, and that it was indeed
his duty, to consider the merits of the motion, we, how-
ever, are not satisfied with his conclusion that the sale
should be confirmed. Col. Henry T. Thompson, the father
of the appellants, represented them as their guardian ad
litem.

The law as to the duty of a guardian ad litem is
3, 4 thus stated in 22 Cyc. 662:

"The duty of a guardian ad litem or next friend
is to look after the infant's interest and to act for him
in all matters relating to the suit as he might act for him-
self if he were of capacity to so do. The guardian ad
litem should make a defense of the interests of the infant
as vigorous as the nature of the case will admit. His duty
requires him to acquaint himself with the rights, both
legal and equitable, of his wards, and take all necessary
steps to defend and protect them, and to submit to the
Court for its consideration and decision every question in-
volving the rights of the infant affected by the suit. If in
consequence of the culpable omission or neglect of the
guardian ad litem the interests of the infant are sacrificed,

the guardian may be punished for his neglect, as well as made to respond to the infant for the damage sustained."

This language is quoted with approval in *Cagle v. Schaefer,* 115 S. C. 89, 104 S. E. 321, in which Mr. Justice Hydrick, who delivered the opinion of the Court, said:

"In failing to perform their duty to defend the action in behalf of their wards the guardian ad litem of the infant defendants and their testamentary trustee were both guilty of culpable negligence, which would have subjected them to liability to their wards if any damage had resulted. A notion, which is entirely erroneous, seems to be prevalent that a guardian ad litem for infant defendants fully performs his duty when he files a formal answer, submitting their rights to the protection of the Court."

Paragraph 5 of the complaint in the former action is as follows:

"That Mrs. Hannah McIver, the life tenant, and her son, John K. McIver, one of the remaindermen, have entered into a contract to sell to the plaintiff all the timber on the tract above described, but these plaintiffs are advised that they are unable to make a good title to said timber, without the aid of this honorable Court, as the defendants above named also have an interest, and are minors under the age of 21 years, and cannot execute a title. That these plaintiffs have agreed to pay for said timber $1,650 in cash upon the condition that they are given 20 years in which to remove the timber off said land."

Paragraph 7 of the complaint alleges:

"These plaintiffs are informed that there is a mortgage on said property, the same having been executed by the life tenant and remaindermen to Mrs. L. M. Davis during the lifetime of Mrs. Fannie McIver Thompson and that a portion of said purchase money is to be used in liquidating said mortgage."

14—S. C. 117

We desire to call special attention to this statement of facts in the decree or his Honor, Judge Wilson:

"The life tenant, Hannah J. McIver, died A. D. 1916, and John K. McIver, her child, is still living, and is plaintiff in this action. Before the death of Fannie, she, her mother, Hannah J. McIver, her husband, Henry T. Thompson, and her brother, Jno. K. McIver, all joined in the execution of a mortgage to one Mrs. L. M. Davis."

It will be observed that the complaint omitted the fact that Col. Henry T. Thompson also joined in the execution of the mortgage. There was also another mortgage on the property, which is mentioned in Judge Wilson's decree.

The testimony satisfies us that the following are the facts in the case:

(1) That it was not the intention of any of the parties to the former action that the infant defendants were to receive any money or benefit whatever from the sale of the timber.

(2) That it was the intention of the parties that the proceeds arising from the sale of the timber was to be used in satisfaction of the indebtedness incurred by the mortgage above named, for which the infant remaindermen were in no wise liable.

(3) That the rights of the infants were not protected in the manner required by law.

We call attention to this statement in the decree of Judge Wilson:

"The Scott Lumber Company are subsequent purchasers. They purchased only after an examination of the records. Some faith and credit must be given to the records provided by the Legislature and the judgments of the Courts of this State. I hold that the Scott Lumber Company are subsequent purchasers for value, that the money was paid in accordance with the conditions of the former order, and that the deed from Henry T. Thompson to the Scott Lumber Company is good and valid."

As the Scott Lumber Company purchased "only after an examination of the records," and as the records did not show that the sale made by Col. Henry T. Thompson had been confirmed, it (the Scott Lumber Company) is not entitled to the protection of a purchaser for valuable consideration without notice. Furthermore, the recitals in the deed to its grantors under which it holds were sufficient, at least, to put the Scott Lumber Company upon inquiry.

This practically disposes of all the exceptions.

The judgment of the Circuit Court is reversed and the case remanded to that Court for the purpose of carrying into effect the conclusions herein announced.

MR. JUSTICES WATTS and COTHRAN concur.

MR. JUSTICE FRASER disqualified on account of relationship to certain of the parties.