19407

CLARENDON HOLDING COMPANY, Inc. by R. R. DuRant, Jr., and Thomasine G. Mason, its Trustees, Appellant, v. Carroll WITH-ERSPOON and Howard Elkins, his duly appointed Committee, Respondents.

(188 S. E. (2d) 480)

*Messrs. Baker & Etheridge,* of Darlington, and *Arrow-smith & Jackson,* of Florence, *for Defendant-Respondent,*

*Messrs. Morris & Land,* and *Rogers & Riggs,* of Manning, and *Bryant & Fanning,* of Orangeburg, *for Plaintiff-Appellant,*

May 2, 1972.

*Per Curiam:*

This action was brought by the plaintiff to quiet title to a 28-acre tract of land located at or near the intersection of Highway I-95 and U. S. Highway 301 in Clarendon County. The complaint alleges that Clarendon Holding Company is the owner of the subject property, and that R. R. DuRant, Jr., and Thomasine G. Mason are its duly appointed trustees, and as such hold title to the property of the corporation. It alleges that the defendant Carroll Witherspoon has, or may claim an interest in the property and that such constitutes a cloud on the plaintiff's title.

The defendant Carroll Witherspoon, a person *non compos mentis,* through his guardian ad litem George H. Witherspoon, answered the complaint, alleging that plaintiff had no title to the land, and alleging that plaintiff's purported title was procured wrongfully under an invalid court order. Further answering, and by way of counterclaim, defendant Carroll Witherspoon asked that he be declared sole owner of the property and placed in possession of the same.

The defendant Howard Elkins, as committee for the defandant Carroll Witherspoon, answered the complaint, alleging that he performed services as committee in good faith and submitted the rights of his ward to the protection of the court.

After depositions were taken and requests for admissions submitted and answered by several witnesses, counsel for the defendant Carroll Witherspoon moved for summary judgment under Rule 44 of the circuit court. There were several grounds to the motion, which asked the court to rule ". . . Carroll Witherspoon is the owner in fee simple of the real property involved in this action, free and clear of any claim of Plaintiffs or those holding under them." We need consider only ground number 3:

"3. As a matter of law, the alleged Committee for Carroll Witherspoon. Howard Elkins, did not perform his legal obligations to his ward, Carroll Witherspoon, nor take any action to protect his interests, in the proceedings resulting in the sale of Carroll Witherspoon's land to Plaintiffs, all of which inaction resulted from Howard Elkins' connivance with Plaintiffs to obtain title to Carroll Witherspoon's lands for Plaintiffs, and such proceedings are therefore null and void and not binding on Carroll Witherspoon."

The trial judge granted the motion on several grounds. We affirm on the limited ground hereinafter indicated. The facts which served as a basis for granting summary judgment on ground 3 as indicated above are not substantially in dispute.

In the early 1960's it became common knowledge that Interstate Highway 95 ("I-95") would be constructed through Clarendon County. The plans called for I-95 to intersect U. S. Highway 301 at a point approximately four and one-half miles southwest of Manning.

Clarendon Holding Company, Inc., the plaintiff, was organized about this time. Its founders contemplated the purchase of property along the path of the new highway as an investment.

Incident to the procurement of rights-of-way by the highway department for the purpose of constructing Highway I-95, several members of the bar at Manning were called upon to examine titles to real estate. In the course of abstracting titles, Mrs. Thomasine G. Mason learned that Carroll Witherspoon owned the 28-acre tract which is the subject of this action. She contacted his uncle, John Witherspoon, to get information relative to the family. Carroll Witherspoon had inherited the land while a patient in the State Hospital. John Witherspoon talked with her concerning Carroll's getting some benefit from the property. He said that the land was nonproductive and indicated a desire to do something for

Carroll, who had been confined in the State Hospital since 1930. He was conditionally released in 1970.

In the early fall of 1964 Mr. John G. Dinkins (now deceased) of the Manning bar, who was attorney for and stockholder of the Clarendon Holding Company, discussed with Mason the possibility of buying Carroll Witherspoon's land. Following the discussions, John Witherspoon petitioned the probate court for the appointment of Howard Elkins as committee for Carroll Witherspoon. Elkins was executive vice-president of the Bank of Clarendon. Two of the stockholders of the plaintiff were officers in the same bank, and Dinkins was attorney for the bank as well as for the plaintiff. The probate court appointed Elkins committee on October 28, 1964.

On November 4, six days after his appointment as committee, Elkins signed an *ex parte* petition asking the Court of Common Pleas to approve the sale of Witherspoon's 28 acres to Clarendon Holding Company. The incompetent Carroll Witherspoon was not made a party to that action for the sale of his land, and the petition was not served upon him nor upon the superintendent of the hospital where he was confined.

The petition to sell alleged that Carroll Witherspoon was not receiving any benefit from the land and that the property was not producing income; that the committee had been offered $12,500 (less attorney's fees, surveyor charges, unpaid taxes and necessary costs and expenses) by the Clarendon Holding Company for a deed to the property. It further alleged that such was a full and fair price. The petitioner prayed for an order of the court authorizing consummation of the sale. To the petition was attached an affidavit of S. J. Brogdon and N. R. Cousar, realtors, who expressed the opinion that $12,500 was a full, fair and just price. Each stated that it would be to the best interest of Carroll Witherspoon for the sale to be made and the money reinvested.

On November 10, 1964 the Court of Common Pleas for Clarendon County issued its order based on the petition, authorizing and directing Elkins, as committee to convey Carroll Witherspoon's land to Clarendon Holding Company. A deed was so executed. Since that time the Clarendon Holding Company has deeded the property to R. R. DuRant, Jr., and Thomasine G. Mason as trustees for the stockholders.

At the instigation of counsel for the defendant Carroll Witherspoon, depositions of R. R. DuRant, Jr., and Joe P. Moore, stockholders of the plaintiff, and of Howard Elkins were taken. Later the deposition of Mason was taken. In addition, requests for admissions were submitted to Elkins, DuRant and Mason. It was upon the basis of these depositions, admissions, court records and the pleadings, that the judge granted the motion of defendant Carroll Witherspoon for summary judgment and held that he was owner of the land.

On this appeal the plaintiff challenges the correctness of the judge's ruling on several grounds. We think that the judge properly held that the committee did not afford Carroll Witherspoon true representation in the proceeding wherein the sale of his property was authorized. The judge's conclusion on this point is clearly established by the record to the exclusion of all other reasonable inferences. The facts are established by Elkins' own deposition and admissions. He is to be commended for his frankness and honesty in testifying. The proof is fortified in essential details by the other depositions and admissions.

Elkins never met John Witherspoon or Carroll Witherspoon, nor did he know anything about them. Elkins did not know that John Witherspoon had signed the petition for his (Elkins') appointment as committee. He made no attempt to see Carroll Witherspoon. He had never, prior to that appointment, served as committee for any other person, nor has he since so served. Elkins testified that he had no knowl-

edge of his legal obligations as committee. He did not know why he was chosen to act.

Elkins had no knowledge concerning the filing of a bond nor concerning a surety thereon. He never accounted to the probate court for the funds of Carroll Witherspoon until May, 1970. He made no attempt to locate any other property belonging to Carroll Witherspoon nor to inventory his estate as required by law. He made no court appearances on Witherspoon's behalf. He made no investigation to determine the value of the 28-acre tract nor the propriety of its sale. He did not know where the land was located nor how much land was involved. Elkins discussed the sale with no one and did not even know who was negotiating regarding it.

According to Elkins, he made no judgment as to whether or not it would be in Carroll Witherspoon's best interest to sell the property. He testified that he "wasn't aware that [he] petitioned to have it sold." He did not even recall signing a deed.

Finally, Elkins' testimony reveals that the money which he received from the sale of the land has never drawn interest. Upon receiving the money Elkins deposited it in a checking account in the Bank of Clarendon where he worked. From time to time he made payments to the South Carolina Department of Mental Health. Other than doing this it appears that the *only* action Elkins ever took in carrying out his appointment as committee was to perfunctorily sign documents which were presented to him—documents which he neither knew nor attempted to learn the contents of.

Rule 44 of the circuit court contemplates the granting of summary judgment when there is no genuine issue for trial. We agree with the judge's conclusion that Carroll Witherspoon had no true representation in the action brought to secure approval of the sale. On that ground, the order of the lower court is affirmed.

> It goes without saying that a committee is under a duty to protect the interests of his ward. The relationship is fiduciary. In *Simpson v. Doggett,* 159 S.

C. 294, 156 S. E. 771 (1930), a consent judgment was vacated on the ground that the guardian *ad litem* was not diligent and did not properly look after the interest of his minor ward in that said minor was not adequately compensated for her injuries. There we said, quoting 31 C. J. 1141:

"The position of a guardian *ad litem* or next friend is one of trust and confidence toward the infant as well as the court; hence, it is his duty fully to protect the infant's interests in all matters relating to the litigation, as the infant might act for himself if he were of capacity to do so. His duty requires him to acquaint himself with all the rights of the infant in order to protect them, and to submit to the Court for its consideration and decision every question involving the rights of the infant affected by the suit. He should be as careful not to do anything, or allow anything to be done, to the prejudice of his ward's interests, as the court from which he receives his appointment. If in consequence of the culpable omission or neglect of the guardian *ad litem* the interests of the infant are sacrificed, the guardian may be punished for his neglect as well as made to respond to the infant for the damage sustained. The misconduct of a guardian *ad litem* or next friend in protecting the infant's interest does not affect the jurisdiction of the court in rendering the judgment in the suit or action; the judgment is not rendered thereby void; it is merely a matter of error, for which a judgment may be set aside."

These principles, set forth in *Simpson,* apply to the committee incompetent relationship as well as to the guardian-minor relationship. In the land-sale action Elkins, as committee, undertook to act in lieu of a guardian *ad litem.* Though he was not technically a guardian *ad litem,* there was imposed upon him the same duty.

"It is the duty of courts to protect the interests and rights of minors and persons *non compos mentis* whose property, under the law, has been intrusted to their care. To divest them of any right, the proceeding for that purpose must be

entirely legal without any question concerning it." *Ex Parte Hineline,* 166 S. C. 352, 164 S. E. 887 (1932).

A decree procured under the circumstances of this case cannot stand.

Inasmuch as we affirm the lower court's order for the reason discussed above, we need not consider the trial judge's ruling that Carroll Witherspoon was not a party to the proceeding brought for disposal of his property. However, we sustain those exceptions which allege error on the part of the judge in disposing of the fraud issues by way of a summary judgment ruling. Such was error because those issues should not have been decided without a trial of the case on its merits.

Based solely on the ground that the incompetent was not properly represented in the former action, we affirm the result reached by the trial judge.

Defendant Carroll Witherspoon has asked that Elkins be removed as committee and for an accounting. The lower court ordered that certain repayments be made to plaintiff. These matters (and perhaps others) must be pursued. The case remains open for further action and is remanded.

Affirmed.