483 S.E.2d 751

**Todd Douglas FLEMING, individually and by his next friend, Kenneth L. Fleming, Plaintiff,**

v.

**Mary Ann ASBILL, Defendant.**

**No. 24594.**

Supreme Court of South Carolina.

Heard June 4, 1996.

Decided March 31, 1997.

50

Calvin A. Rouse, Augusta, GA, for Plaintiff.

Charles J. Baker, III, and Mia Lauren Maness, both of Holmes & Thomson, Charleston; Desa A. Ballard, of Ness, Motley, Loadholt, Richardson & Poole, Charleston; and S. Jahue Moore, of Kirkland, Wilson, Moore, Allen & Taylor, West Columbia, for Defendant.

Thomas M. Neal, III, of Oxner & Oxner, Columbia, for Amicus Curiae South Carolina Association of Guardians ad Litem.

TOAL, Justice.

We agreed to answer two questions certified to this Court by order of Matthew J. Perry, United States District Judge for the District of South Carolina:

1. Is a private person, who is court-appointed to serve as guardian ad litem in a private custody proceeding, acting as an agent or employee of the State of South Carolina within the definition of employee set forth in the South Carolina Tort Claims Act, § 15–78–30(c) (Supp.1995), in the performance of her official duties as guardian ad litem?

2. Is a private person, who is court-appointed to serve as a guardian ad litem in a private custody proceeding, afforded common law immunity for acts performed within the scope of her appointment as guardian ad litem? If so, what is the nature and scope of the common law immunity?

### FACTUAL/PROCEDURAL BACKGROUND

Mary Ann Asbill was appointed in July 1986 by a South Carolina family court to serve as guardian ad litem for a minor child who was at the center of a private custody action.[1] She served in this capacity until she was relieved, at her request, by the court in late 1989. The parties were ordered to, and did pay, certain funds to Asbill for a portion of her services as guardian ad litem.

The minor child and his father, Fleming, filed an action in federal district court against Asbill for breach of fiduciary duty and negligence arising out of the custody proceedings. The district court dismissed the claims. On appeal, the Fourth Circuit Court of Appeals affirmed the dismissal of all claims except the common law claims by the minor child against the defendant. *Fleming v. Asbill,* 42 F.3d 886 (4th Cir.1994). The Fourth Circuit concluded that South Carolina common law permits a ward to sue his guardian ad litem for negligence in the performance of her duties.

On remand, Asbill moved for summary judgment, arguing, in part, that the claims against her should have been brought pursuant to the South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–10 *et seq.* (Supp.1995), because all alleged acts occurred in her capacity as an employee of the State of South Carolina. The summary judgment motion prompted the certification of the two questions set forth above.

---

1. Asbill, a private attorney, was frequently appointed to serve as guardian ad litem in family court matters. She was not affiliated with any organized guardian ad litem program.

LAW/ANALYSIS

## A. SOUTH CAROLINA TORT CLAIMS ACT

We have been asked whether a private person, who is court-appointed to serve as guardian ad litem in a private custody proceeding, is acting as an agent or employee of the State of South Carolina within the definition of employee set forth in the South Carolina Tort Claims Act, § 15–78–30(c) (Supp. 1995), in the performance of her official duties as guardian ad litem.

Section 15–78–30(c) defines "employee" as "any officer, employee, or agent of the State or its political subdivisions, including elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of a governmental entity in the scope of official duty, whether with or without compensation, but the term does not include an independent contractor doing business with the State or any political subdivision thereof."

 Asbill argues that guardians ad litem fit the definition of "employee" under section 15–78–30(c) because a guardian is an "agent of the State or its political subdivisions." We disagree. Agency implies the existence of a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf. *See* Restatement (Second) of Agency § 1 (1957). The relationship between the court and a guardian ad litem is not an agency relationship. The guardian ad litem functions as a representative of the court which appointed her to assist the court in properly protecting the interests of an incompetent person. *Shainwald v. Shainwald,* 302 S.C. 453, 395 S.E.2d 441 (Ct. App.1990). Nevertheless, the guardian is not acting on "behalf" of the court; she does not effect legal relationships between the court and third parties. *See Peeples v. Orkin Exterminating Co.,* 244 S.C. 173, 135 S.E.2d 845 (1964). Similarly, the relationship between the court and the guardian ad litem is not an employer-employee relationship. Accordingly, we find that guardians ad litem are not "employees" under section 15–78–30(c).

## B. COMMON LAW IMMUNITY

The next question we must address is whether a private person, who is court-appointed to serve as a guardian ad litem in a private custody proceeding, is afforded common law immunity for acts performed within the scope of her appointment as guardian ad litem. If so, what is the nature and scope of the common law immunity?

■ We have not previously addressed this issue; however, there is a series of South Carolina cases declaring that guardians ad litem are liable for their negligent acts when they fail to protect the pecuniary interests of their wards:

> The duty of a guardian ad litem or next friend is to look after the infant's interest and to act for him in all matters relating to the suit as he might act for himself if he were of capacity to so do. The guardian ad litem should make a defense of the interests of the infant as vigorous as the nature of the case will admit. His duty requires him to acquaint himself with the rights, both legal and equitable, of his wards, and take all necessary steps to defend and protect them, and to submit to the court for its consideration and decision every question involving the rights of the infant affected by the suit. If in consequence of the culpable omission or neglect of the guardian ad litem the interests of the infant are sacrificed, the guardian may be punished for his neglect, as well as made to respond to the infant for the damage sustained.

*McIver v. Thompson*, 117 S.C. 175, 192–93, 108 S.E. 411, 416 (1921); *see Clarendon Holding Co. v. Witherspoon*, 258 S.C. 296, 188 S.E.2d 480 (1972); *Cumbie v. Cumbie*, 245 S.C. 107, 139 S.E.2d 477 (1964); *Simpson v. Doggett*, 159 S.C. 294, 156 S.E. 771 (1930); *Cagle v. Schaefer*, 115 S.C. 35, 104 S.E. 321 (1920).

An uncritical application of the *McIver* approach to the acts of guardians ad litem in private custody proceedings would fail to take into account the historical changes that have occurred in the functions guardians perform. The role of guardians ad litem in the 1990's is not the same as the role they played in the 1920's. Their role has changed significantly in recent decades. Whereas in the past, the guardian ad litem served in almost a trustee-like capacity, seeking to specifically advocate

the pecuniary interests of the ward, a present-day guardian ad litem in a private custody dispute functions as a representative of the court appointed to assist it in protecting the best interests of the ward. *Townsend v. Townsend,* 323 S.C. 309, 474 S.E.2d 424 (1996). The guardian accomplishes this responsibility by ascertaining the best interests of the ward and advocating to the court the ward's best interest. *Id.* Given that guardians ad litem play a different role today, we must analyze anew whether guardians serving in private custody disputes should be granted immunity from suits.

Moreover, although, at first glance, the *McIver* line of cases may suggest a finding of no immunity for guardians ad litem, they are inapplicable for at least two other reasons. First, these cases did not involve child custody. Second, despite the fact that they contain dicta that guardians ad litem are liable for negligence, none of the cases involved an action in tort against the guardian herself. Instead, all dealt with other matters in which the guardian was only incidentally involved. For example, *Cagle* was an action for specific performance of a contract for the sale of certain lands. *Cagle,* 115 S.C. 35, 104 S.E. 321. *Cumbie* and *McIver* were both actions for partition of land. *Cumbie,* 245 S.C. 107, 139 S.E.2d 477; *McIver v. Thompson,* 117 S.C. 175, 108 S.E. 411; *see also Simpson,* 159 S.C. 294, 156 S.E. 771 (tort action against a third party, not the guardian ad litem); *Clarendon Holding,* 258 S.C. 296, 188 S.E.2d 480 (action to quiet title).

Case law from other jurisdictions, as well as strong policy reasons, convince us that guardians ad litem in private custody actions should be entitled to immunity. *See State ex rel. Bird v. Weinstock,* 864 S.W.2d 376 (Mo.Ct.App.1993) (Quasi-judicial immunity is extended to statutorily mandated guardians ad litem in child custody proceedings.); *Penn v. McMonagle,* 60 Ohio App.3d 149, 573 N.E.2d 1234 (1990) (In performing her duties in divorce proceedings, guardian ad litem for children was entitled to absolute immunity.), *juris. motion overruled,* 58 Ohio St.3d 704, 569 N.E.2d 512 (1991).[2] One court has

---

2. *See also Cok v. Cosentino,* 876 F.2d 1 (1st Cir.1989) (Guardian ad litem has absolute quasi-judicial immunity for those activities integrally related to the judicial process.); *Myers v. Morris,* 810 F.2d 1437 (8th Cir.) (Guardians have absolute immunity for any damage claims based on the function of testifying before, or providing reports and recom-

articulated the following policy rationale for granting guardians ad litem quasi-judicial immunity: "To safeguard the best
interests of the children, however, the guardian's judgment
must remain impartial, unaltered by the intimidating wrath
and litigious penchant of disgruntled parents. Fear of liability
to one of the parents can warp judgment that is crucial to
vigilant loyalty for what is best for the child; the guardian's
focus must not be diverted to appeasement of antagonistic
parents." *Short v. Short,* 730 F.Supp. 1037, 1039 (D.Colo.
1990). In addition to preserving the independence and neutrality of the guardian ad litem, a grant of immunity also is
reasonable in light of the fact that many court-appointed
guardians have not volunteered for the position. It is inequitable for persons who did not ask to be appointed as guardian
to be exposed to unlimited liability.

 It has been argued that a grant of immunity could
lessen the protection of the ward, if a guardian ad litem knows
that she cannot be found liable for gross negligence or even
recklessness in the performance of her duties. Although it
may not be possible to fully protect against this danger,
certain safeguards do exist. First, the immunity would not
protect guardians ad litem for actions beyond the scope of
their duties. Thus, for example, if a guardian abuses a child,

mendations to, the family court.), *cert. denied,* 484 U.S. 828, 108 S.Ct.
97, 98 L.Ed.2d 58 (1987); *Kurzawa v. Mueller,* 732 F.2d 1456 (6th
Cir.1984) (Guardian has grant of absolute immunity.); *Ward v. San
Diego County Dep't of Social Servs.,* 691 F.Supp. 238 (S.D.Cal.1988)
(Guardian is entitled to absolute quasi-judicial immunity.); *Babbe v.
Peterson,* 514 N.W.2d 726 (Iowa 1994) (General rule is that court-
appointed guardians ad litem perform quasi-judicial functions and,
thus, are granted judicial immunity.); *Barr v. Day,* 124 Wash.2d 318,
879 P.2d 912 (1994) (en banc) (Guardians ad litem in guardianship
proceedings involving court approval of settlements of civil claims of
incompetents act as an arm of the court and are therefore entitled to
quasi-judicial immunity from civil liability.); *Collins v. Tabet,* 111 N.M.
391, 806 P.2d 40 (1991) (If guardian is acting as an agent of the court,
then he is immune; if, however, he is representing the minor as an
advocate, then he is not cloaked by immunity.); *Delbridge v. Office of
the Public Defender,* 238 N.J.Super. 288, 569 A.2d 854 (Law Div.1989)
(Law guardians are cloaked with absolute judicial immunity.); *Tindell
v. Rogosheske,* 428 N.W.2d 386 (Minn.1988) (Guardian is absolutely
immune.); *see generally* Susan L. Thomas, Annotation, *Liability of
Guardian Ad Litem for Infant Party to Civil Suit for Negligence in
Connection with Suit,* 14 A.L.R.5th 929 (1993).

she would be liable because her actions would fall outside her duties as guardian. Second, the accountability of the guardian ad litem is preserved in various ways. For example, the opposing party may cross-examine the guardian ad litem and any witnesses whose testimony form the basis of the guardian's recommendation. *See Shainwald,* 302 S.C. 453, 395 S.E.2d 441. This accountability is further ensured through: 1) the appointing court's oversight of the guardian ad litem's discharge of duties; 2) the parents' ability to move the court for termination of the guardian; 3) the court's prerogative to reject the recommendations of the guardian; and 4) judicial review of family court decisions relying on a guardian's recommendations. *See Short,* 730 F.Supp. at 1039.

Both persuasive authority and the policy reasons set forth above convince us to hold today that private persons appointed as guardians ad litem in private custody proceedings are afforded immunity for acts performed within the scope of their appointment. Because one of the guardian's roles is to act as a representative of the court, and because this role can only be fulfilled if the guardian is not exposed to a constant threat of lawsuits from disgruntled parties, a finding of quasi-judicial immunity is necessary. Such a grant of immunity is crucial in order for guardians to properly discharge their duties. The immunity to which guardians ad litem are entitled is an absolute quasi-judicial immunity. *See Hartline v. Clary,* 141 F.Supp. 151 (E.D.S.C.1956) (Judicial officers, quasi-judicial officers, judges, prosecuting attorneys, executive and ministerial officials of the government are immune from civil suit for acts committed by them in the performance of their official duties.).

Although we hold that guardians ad litem in private custody proceedings are entitled to immunity, we must observe that an anomaly exists in South Carolina law as to a special class of volunteer guardians ad litem. S.C.Code Ann. § 20–7–127 (Supp.1995), which applies to lay volunteer guardians ad litem in abuse and neglect cases, provides:

After participating in the training program of the Guardian ad Litem Program, any person who is appointed to serve as guardian ad litem and serves without compensation is not liable for any civil damages for any personal injury as a result of any act or omission by the person in the discharge

of the responsibilities of a guardian ad litem *if he acts in good faith and is not guilty of gross negligence.*

(emphasis added). This statute thus exposes volunteer guardians in abuse and neglect cases to liability for grossly negligent acts. It is obviously incongruous, and inequitable, to grant immunity to guardians ad litem in private custody actions, but not to volunteer guardians in abuse and neglect cases. Because it is beyond our power to effect a change in this statute, we would invite the Legislature to eliminate this discrepancy.

## CONCLUSION

Based on the foregoing, we hold that a guardian ad litem is not an employee for purposes of the Tort Claims Act, and we find common law immunity does exist for guardians ad litem in private custody proceedings.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.