709 S.E.2d 701

**Peter BROWN, Appellant,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 4821.**

Court of Appeals of South Carolina.

Heard Feb. 9, 2011.

Decided April 20, 2011.

12

Patricia Logan Harrison, of Columbia, for Appellant.

Byron Ronald Roberts, of Columbia, for Respondent.

FEW, C.J.

In this case we determine that the South Carolina Department of Health and Human Services (DHHS) has jurisdiction to decide an appeal from the termination of Medicaid waiver services. We reverse DHHS's and the Administrative Law Court's decisions to the contrary and remand for a hearing on the merits.

## I. Facts and Medicaid Background

Peter Brown is a forty-three-year-old Medicaid recipient with mental retardation. He has related disabilities of epilepsy and diabetes. His IQ is 44, and his psychological evaluation places him at the juncture between the mild and moderate levels of mental retardation. He lives in Spartanburg, South Carolina at the Charles Lea Center, a supervised living arrangement for people with mental disabilities. Peter's ex-

penses at the Center are paid with federal funds through Medicaid. Before Peter lived at the Center, he had been required under federal Medicaid law to live in an institutional intermediate care facility for the mentally retarded (ICF/MR). In 1991, however, Peter began participating in a program that allowed him to move out of the ICF/MR institution and into the Center. Under this program, the United States Department of Health and Human Services waives the statutory requirement that individuals with mental disabilities live in an institution in order to receive money for Medicaid services.[1] This "waiver" program provides services to certain Medicaid recipients, like Peter, in a less restrictive setting, such as the Center.[2] The program saves money and improves the quality of life for Medicaid recipients by keeping them out of an institution.

Each state applies for approval of its customized waiver program by submitting a "waiver document" to the federal Centers for Medicare and Medicaid Services.[3] The South Carolina Department of Disabilities and Special Needs (DDSN) operates South Carolina's Mental Retardation/Related Disabilities (MR/RD) waiver, which specifically lists and defines the services it may provide to qualifying individuals.[4] The services provided under the waiver are intended to prevent an individual from regressing to the point of requiring institutionalization, and only a person who would otherwise qualify to live in an ICF/MR may receive waiver services.[5] Peter was allowed to forego institutionalization, and instead receives the residential habilitation waiver service through the

---

1. 42 U.S.C. § 1396n(c) (Supp.2010); 42 C.F.R. § 441.300 (2010); *Doe v. Kidd,* 501 F.3d 348, 351 (4th Cir.2007).

2. *See* S.C.Code Ann. § 44–20–20 (2002) ("It is the purpose of this chapter to assist persons with mental retardation … by providing services to enable them to participate as valued members of their communities to the maximum extent practical and to live … in the least restrictive environment available.").

3. 42 C.F.R. §§ 440.180(b), 431.55 (2010).

4. S.C.Code Ann. § 44–20–270 (2002).

5. The services provided and descriptions of them are found in the MR/RD Waiver Document (effective Oct. 1, 2004–Sept. 30, 2009) (on file with SCDDSN).

Center. This includes services to help him meet his daily living needs at the Center such as cleanliness, chores, and food preparation.

Peter also received another Medicaid service—twelve hours per week of one-on-one service. However, that service is not listed in the waiver document. Peter's one-on-one service has been provided since 1992, when he was diagnosed with a pre-diabetic condition. The initial purpose of the service was to have someone with Peter to ensure he ate enough food and followed his diabetic diet. By the time the Center notified Peter of its intent to terminate the service in 2005, it included grocery help and community socialization activities. To manage his diabetes dietary restrictions, Peter has set menus and corresponding grocery lists for each week. The employee providing the one-on-one service helped Peter inventory his food supply and make a grocery list to match his weekly menu. The employee also helped Peter choose and attend activities in the community with non-disabled people.

## II. Procedural History

In February 2005, the Center sent Peter's mother, Carolyn Brown, a letter notifying her of its intention to terminate Peter's twelve hours per week of one-on-one service.[6] In March 2005, Peter appealed the termination to DDSN. Based on its determination that the residential habilitation waiver service was "sufficient to meet Peter's needs," DDSN upheld the Center's decision to terminate the one-on-one service. DDSN's letter notifying Mrs. Brown of its decision stated: "Ultimately there has been no reduction or termination of MR/RD Waiver Services to Peter. Sufficient services and supports can be provided to Peter based on his assessed needs...." In April 2005, Peter appealed the final DDSN agency decision to DHHS.

---

**6.** Peter is also a plaintiff in an action proceeding simultaneously in federal court that alleges DHHS and DDSN violated the Americans with Disabilities Act and other federal statutes. *Peter B. v. Sanford*, No. 6:10–cv–00767–JMC, 2011 WL 824584 (D.S.C. Mar. 7, 2011). On March 7, 2011, the United States District Court for the District of South Carolina granted the plaintiffs a temporary injunction prohibiting the defendants from reducing or terminating certain Medicaid services. As a result, Peter is currently receiving his one-on-one service.

The DHHS hearing officer found as a matter of law that "if a service cannot be shown to keep a person out of an institutional facility for the mentally retarded, it is not a service covered by the Medicaid waiver." He then concluded: "If a service is not covered by Medicaid ... it is not under the subject matter jurisdiction of a SCDHHS Hearing Officer." Applying that conclusion to Peter's complaint, the hearing officer determined he did not have subject matter jurisdiction because Peter "has not met his burden of proof, by preponderance of the evidence, to establish that the one[-]on[-]one services are necessary to keep him out of an institution for the mentally retarded ... and thereby establishing the subject matter jurisdiction of this Hearing Officer."

Peter appealed to the ALC. The ALC affirmed the hearing officer's decision, finding the one-on-one service is not a waiver service because it is not mentioned in the waiver document, and Peter did not show it is necessary to keep him out of an ICF/MR. Peter also argued his one-on-one service met the definition of the adult companion waiver service, and thus was covered by Medicaid and within the hearing officer's jurisdiction. The ALC rejected this argument. The ALC denied Peter's motion to alter or amend the judgment.

### III. Jurisdiction

■ "Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." *Majors v. S.C. Sec. Comm'n*, 373 S.C. 153, 159, 644 S.E.2d 710, 713 (2007). It refers to a tribunal's constitutional or statutory power to decide a case. *Johnson v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, 372 S.C. 279, 284, 641 S.E.2d 895, 897 (2007). "The question of subject matter jurisdiction is a question of law...." *Chew v. Newsome Chevrolet, Inc.*, 315 S.C. 102, 104, 431 S.E.2d 631, 631 (Ct.App.1993).

■ Jurisdiction in this case is defined by federal and state regulations. When an individual believes his Medicaid-covered services or benefits have been wrongfully denied, terminated, suspended, changed, or reduced, he may appeal. 42 C.F.R. §§ 431.220(a)(1)–(2), 431.201 (2010); S.C.Code Regs. 126–380(A)–(B) (1992). The waiver document provides the

right to appeal first to DDSN and then to DHHS. We find a DHHS hearing officer has subject matter jurisdiction to hear an appeal from the denial, termination, suspension, or reduction of a service or benefit which the individual alleges is covered by Medicaid. The jurisdiction of any tribunal is determined by the allegations, not by the answer to the questions raised by the allegations. *See* 21 C.J.S. *Courts* § 17 (2006) ("If the pleadings contain sufficient matter to challenge the attention of the court, and such a case is thereby presented as to authorize the court to deliberate and act, this is sufficient for the purpose of conferring jurisdiction. Thus, if a complaint sets forth a case belonging to the general class over which the authority of the court extends, the fact that it fails to state a cause of action does not affect the jurisdiction of the court."). Here, Peter alleges his one-on-one service is covered by Medicaid. Because jurisdiction is determined by the question to be answered, not by the answer itself, DHHS is the proper tribunal to determine whether he is correct.

■ Nevertheless, the ALC and DHHS hearing officer found Peter's one-on-one service is not covered by Medicaid as a waiver service because Peter did not prove it was necessary to keep him out of an institution. This supposed requirement comes from the following statement in the waiver document:

This waiver is requested in order to provide home and community-based services to individuals who, but for the provision of such services, would require the following level(s) of care, . . .: Intermediate care facility for mentally retarded or persons with related disabilities (ICF/MR).

From this statement, the hearing officer determined "if a service cannot be shown to keep a person out of an institutional facility for the mentally retarded, it is not a service covered by the Medicaid waiver" and therefore outside of his jurisdiction. On appeal, Peter argues the hearing officer erred in requiring him to prove that he would immediately be returned to an ICF/MR facility if his one-on-one service was terminated. We agree.

The statement that the ALC order cites is not intended to provide a legal standard for establishing jurisdiction. Rather, a person must first qualify as one who would require institutionalization without the availability of the waiver-provided

*services,* but is not also required to show that *each* waiver service provided prevents him from institutionalization. For example, the waiver provides for "Prevocational services," which "are aimed at preparing an individual for paid or unpaid employment.... Services include teaching such concepts as compliance, attendance, task completion, problem solving and safety." It is highly unlikely a person would need to be institutionalized absent prevocational skills; however, they are provided under the waiver. To read the document as the ALC interpreted it would necessitate a waiver-qualifying individual to prove that each service he requested was necessary to avoid institutionalization. The ALC erred by imposing upon Peter an incorrect legal standard to establish jurisdiction.

Finally, the ALC noted "one-on-one services are not 'waiver services' ... over which the DHHS hearing officer would have subject matter jurisdiction" because "[t]he waiver document does not mention one-on-one services" and "there is sworn testimony in the record ... that one-on-one services are not MR/RD Waiver services." Peter argues the service was covered under the waiver because it met the definition of the adult companion waiver service. We do not reach the question of whether the service qualifies as a waiver service. We note, however, that the answer to the question is not controlled by whether the service is labeled as one-on-one as opposed to adult companion services.

**IV. Conclusion**

We reverse the ALC's conclusion that the hearing officer did not have subject matter jurisdiction to hear Peter's appeal and its application of an incorrect legal standard. Accordingly, the remainder of the order is vacated, and the case is remanded to DHHS for a hearing on the merits in accordance with this opinion and pursuant to 42 C.F.R. § 431.220(a)(1)–(2).

**REVERSED and REMANDED.**

THOMAS and KONDUROS, JJ., concur.