796 S.E.2d 138

**Karen A. FORMAN, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF LABOR,**
**Licensing and Regulation, State Board of**
**Social Work Examiners, Respondent.**

**Appellate Case No. 2014-000285**
**Opinion No. 5453**

Court of Appeals of South Carolina.

Heard November 10, 2015

Filed November 9, 2016

Rehearing Denied February 21, 2017

Thomas Franklin McDow, IV, and Erin K Urquhart, both of McDow and Urquhart, LLC, of Rock Hill, for Appellant.

Prentiss Counts Shealey and Megan Joan Flannery, of Columbia, for Respondents.

HUFF, J.:

Karen Forman appeals the decision of the Administrative Law Court (ALC) affirming the order of the South Carolina Department of Labor, Licensing and Regulation, State Board of Social Work Examiners (Board) prohibiting her from working as a Guardian ad Litem (GAL) and barring her from all independent social work practice. We affirm.

## FACTS/PROCEDURAL HISTORY

Forman has a master's degree in social work and became a Licensed Master Social Worker (LMSW) in the early 1990s. At the time of the Board's action, she also had become a Licensed Independent Social Worker-Clinical Practice (LISW–CP). She primarily worked as a GAL and has served on over 150 cases. On August 19, 2009, the Board served Forman with a Notice of Charges (Notice) alleging she had engaged in misconduct in violation of the Social Work Examiners Practice Act.[1] The Notice was based upon Forman's work as a GAL in two family court private custody actions. The Notice alleged Forman made recommendations to the family court without interviewing all of the parties involved, conducting a full investigation of all relevant documents and allegations that may be relevant, or supporting her conclusions with

---

1. S.C. Code Ann. §§ 40–63–5 through –300 (2011).

a full report. In addition, the Notice alleged Forman failed to disclose to the family court the Board had placed her license on probation, she had billed for services she had not performed, and she had failed to disclose potential conflicts of interest.

In responding to the Notice, Forman asserted that in Case I, she followed the GAL statute and had done nothing wrong. For Case II, she stated she believed the mother was mentally unstable and "was angry at me because she has no one left to target her anger toward." Forman filed a motion to dismiss contending she was not providing social work services and only the family court has authority over actions taken as a GAL.

After a hearing, the Board determined Forman had committed fraud in violation of South Carolina Code Regulation 110–20(8) (2012) by representing she had performed services she had not performed. It also found Forman had represented herself as a LMSW without disclosing she had been placed in a probationary status.[2] The Board ordered Forman to no longer work as a GAL. It prohibited her from all independent practice and provided she may "engage only in supervised practice, within a recognized, organized setting such as social, medical, and governmental agencies." It required her to submit to the Board semi-annually written reports from her supervisors for two years.

Forman appealed to the ALC. In its final order, the ALC rejected Forman's arguments she was entitled to quasi-judicial immunity and the Board lacked authority to discipline her for her work as a GAL. The ALC found substantial evidence supported the Board's decision she had violated section 40–63–110(B)(9) of the South Carolina Code (2011) and Regulation 110–20(8) by representing to the Board that she had performed services in the two family court cases that she did not perform. It reversed the Board's finding Forman was required to disclose her prior discipline in her GAL affidavit. Because it found the Board's order was unclear whether this finding

---

2. The Board held the State had failed to prove by a preponderance of the evidence Forman had failed to disclose a conflict of interest or that she had put her own financial interest ahead of her professional responsibility.

affected the sanctions, the ALC remanded the matter to the Board for reconsideration of the sanctions.

On remand, the Board found Forman's failure to disclose the previous disciplinary action "played little, if any, role in its decision for the sanctions imposed." Accordingly, it imposed the same sanctions as in the original order. The ALC affirmed this order. This appeal followed.

## ISSUES

I. Does quasi-judicial immunity apply to professional disciplinary proceedings?

II. Are the Board's findings of fact supported by substantial evidence?

III. Does the Board have subject matter jurisdiction to discipline Forman for her actions as a GAL and to prohibit her from serving as a GAL?

## STANDARD OF REVIEW

Judicial review of agency decisions is governed by section 1–23–380 of the Administrative Procedures Act (APA) (Supp. 2015). *Osman v. S.C. Dep't of Labor, Licensing & Regulation*, 382 S.C. 244, 248, 676 S.E.2d 672, 675 (2009). Pursuant to the APA:

The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1–23–380(5) (Supp. 2015).

■■■■ " 'Substantial evidence is relevant evidence that, considering the record as a whole, a reasonable mind would accept to support an administrative agency's action.' " *Trimmier v. S.C. Dep't of Labor, Licensing & Regulation*, 405 S.C. 239, 246, 746 S.E.2d 491, 494 (Ct. App. 2013) (quoting *Porter v. S.C. Pub. Serv. Comm'n*, 333 S.C. 12, 20, 507 S.E.2d 328, 332 (1998)). "Furthermore, the possibility of drawing two inconsistent conclusions from the evidence does not prevent a court from concluding that substantial evidence supports an administrative agency's finding." *Id.* (quoting *Porter*, at 21, 507 S.E.2d at 332).

## LAW/ANALYSIS

### I. Judicial Immunity

■■■ Forman argues quasi-judicial immunity afforded to GALs applies to professional disciplinary proceedings. She relies on *Fleming v. Asbill*, 326 S.C. 49, 55, 483 S.E.2d 751, 754–55 (1997), in which the supreme court ruled GALs in private custody actions should be entitled to immunity from tort actions.

In *Fleming*, the court held,

[P]rivate persons appointed as guardians ad litem in private custody proceedings are afforded immunity for acts performed within the scope of their appointment. Because one of the guardian's roles is to act as a representative of the court, and because this role can only be fulfilled if the guardian is not exposed to a constant threat of lawsuits from disgruntled parties, a finding of quasi-judicial immunity is necessary. Such a grant of immunity is crucial in order for guardians to properly discharge their duties. The immunity to which guardians ad litem are entitled is an absolute quasi-judicial immunity.

*Id.* at 57, 483 S.E.2d at 755–56.

Forman argues immunity from disciplinary proceedings is necessary to protect GALs from disgruntled parties. However, the Board, not a disgruntled party, brought this action after

investigating the complaints it received as required by section 40–1–80 of the South Carolina Code (2011). In rejecting an argument similar to Forman's, the Washington Supreme Court explained why the policy reasons for immunity from civil suits are not applicable to disciplinary proceedings as follows:

[A] disciplinary proceeding is not a civil suit against the expert, and the policies that underscore witness immunity do not apply. Disciplinary actions are different in character to civil actions. ... When we acknowledge these differences, it follows that a rule providing immunity from civil liability does not necessarily provide protection from professional discipline. Just as a rule promulgated for professional discipline is inappropriate as a legal doctrine, a legal doctrine promulgated to achieve the full disclosure of facts may not provide immunity from a professional disciplinary proceeding.

*Deatherage v. State of Wash., Examining Bd. of Psychology,* 134 Wash.2d 131, 948 P.2d 828, 831–32 (1997). The court further explained,

Permitting a professional to be subjected to discipline for unprofessional conduct ... furthers the disciplinary board's goal of protecting the public. ... [T]he reason for immunity is that the court wants to preserve and enhance the judicial process. However, eliminating any threat of punishment (except criminal perjury charges) extends absolute immunity beyond its historical reach.

*Id.* at 832 (citation and internal quotation marks omitted).

Forman does not cite any cases extending quasi-judicial immunity to professional disciplinary proceedings. However, in numerous cases in addition to *Deatherage,* courts have recognized immunity does not extend to such proceedings. *See Imbler v. Pachtman,* 424 U.S. 409, 429, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (noting immunity of prosecutor from civil liability does not exempt his amenability to professional discipline); *Lythgoe v. Guinn,* 884 P.2d 1085, 1092 (Alaska 1994) (upholding absolute immunity for a court-appointed custody investigator but noting additional safeguards exist, including reporting a doctor's behavior to the medical boards); *Budwin v. Am. Psychological Ass'n,* 24 Cal.App.4th 875, 29 Cal.

Rptr.2d 453, 459–60 (1994) (explaining "the reach of quasi-judicial immunity does not encompass disciplinary liability by a private, voluntary association" and concluding the doctrine of quasi-judicial immunity does not bar the American Psychological Association from disciplining an expert witness for the false representations and the wrongful refusal to produce documents); *Carrubba v. Moskowitz*, 274 Conn. 533, 877 A.2d 773, 781–82 (2005) (noting factor supporting extension of absolute judicial immunity to court-appointed attorney for minors—existence of procedural safeguards in the system that would adequately protect against improper conduct—was met because such an attorney is subject to discipline for violations of the Code of Professional Conduct); *Seibel v. Kemble*, 63 Haw. 516, 631 P.2d 173, 177 n.8, 180 (1981) (holding court appointed psychiatrist was entitled to absolute immunity given to judges and other judicial officials but noting the psychiatrist's behavior could be reported to the medical boards for further action); *McKay v. Owens*, 130 Idaho 148, 937 P.2d 1222, 1232 (1997) (explaining granting quasi-judicial immunity to a guardian does not leave the parties without recourse as "[t]he attorney-guardian is still subject to the Idaho Rules of Professional Conduct"); *Curd v. Ky. State Bd. of Licensure for Prof'l Engineers & Land Surveyors*, 433 S.W.3d 291, 299 (Ky. 2014) ("Extending absolute immunity to protect expert witnesses from the possibility of administrative discipline for their testimony stretches the concept beyond the point of recognition."); *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 386 (Mo. Ct. App. 1993) ("Extension of judicial immunity to guardians ad litem in custody matters does not . . . remove all accountability. There are numerous mechanisms in place to prevent abuse and misconduct. Attorney guardians remain subject to the Rules of Professional Conduct."); *State ex rel. Okla. Bar Ass'n v. Dobbs*, 94 P.3d 31, 47 (Okla. 2004) ("[T]he witness immunity doctrine does not preclude imposition of professional discipline for a lawyer's perjury."); *Huhta v. State Bd. of Med.*, 706 A.2d 1275, 1277 (Pa. Commw. Ct. 1998) (declining to extend judicial immunity to administrative disciplinary proceedings before the State Board of Medicine "because it is the Board in which the Commonwealth vests its trust to ensure the competency of practicing physicians and thereby protect the public"); *id.* ("It is the Board that is

charged with the responsibility of overseeing the medical profession and determining the competency and fitness of an individual to practice medicine within the Commonwealth and we decline to handicap the Board in performing this important function.").

The purpose of the Board is the protection of the public. S.C. Code Ann.§ 40–1–40 (2011); *see also Wilson v. State Bd. of Med. Exam'rs*, 305 S.C. 194, 196, 406 S.E.2d 345, 346 (1991) ("The revocation of a physician's license . . . is designed not to punish the physician . . . but to protect the life, health and welfare of the people at large . . . ." (omissions in original) (quoting *Levy v. Bd. of Registration & Discipline*, 378 Mass. 519, 392 N.E.2d 1036, 1041 (1979))). Extension of quasi-judicial immunity to a licensee would hamper the Board in its execution of this vital public function. Accordingly, we hold quasi-judicial immunity for GALs does not extend to disciplinary proceedings.

## II.   Findings of Fact

■   Forman argues the Board's findings of fact are not correct. We disagree.

The Board found Forman had violated state statute and regulation by asserting she had complied with the GAL statute when she had not performed all of the duties the statute requires. *See* S.C. Code Ann. § 40–63–110(B)(9) (2011) (listing as a ground for discipline "the licensee has violated the principles of professional ethics or standards of conduct as adopted by the board and promulgated in regulations . . ."); S.C. Code Ann. Regs. 110–20(8) (2012) ("A social worker shall not commit fraud and shall not represent that he performed services which he did not perform.").

The Board's expert witness, Jania Sommers, described how Forman failed to comply with the statutory requirements in her investigations of these cases. *See* S.C. Code Ann. 63–3–830(A)(2) (2010) (requiring a GAL to conduct "an independent, balanced, and impartial investigation to determine the facts relevant to the situation of the child and the family"); *id.* (setting forth requirements a GAL investigation "must include").

Forman offered explanations for the way she conducted her investigations, including asserting the matters settled before final, contested hearings were held, and thus, full reports were not necessary. On appeal, while Forman acknowledges some of the Boards findings "may be true in a narrow, strict sense," she asserts "they are also incomplete and out of context." However, given our standard of review, we conclude substantial evidence exists in the record to support the Board's findings Forman committed fraud and represented she performed services that she had not performed.

## III. Jurisdiction

Forman argues the Board did not have subject matter jurisdiction to make findings she failed to perform GAL responsibilities as required by statute. She also asserts the family court has exclusive authority to appoint GALs and the Board's prohibition of her working as a GAL is an unconstitutional usurpation of the family court's absolute discretion. We disagree.

" 'Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong.' " *Brown v. S.C. Dep't. of Health & Human Servs.*, 393 S.C. 11, 16, 709 S.E.2d 701, 704 (Ct. App. 2011) (quoting *Majors v. S.C. Sec. Comm'n*, 373 S.C. 153, 159, 644 S.E.2d 710, 713 (2007)). "A court's subject matter jurisdiction is determined by whether it has the authority to hear the type of case in question. *Allison v. W.L. Gore & Assocs.*, 394 S.C. 185, 188, 714 S.E.2d 547, 549 (2011). "This same principle applies to administrative agencies." *Id.*

The South Carolina General Assembly provided for the creation of the Board as administered by the South Carolina Department of Labor, Licensing and Regulation. S.C. Code Ann. § 40–1–40(B) (2011). It authorized the Board to investigate and discipline persons licensed by the Board. S.C. Code Ann. §§ 40–63–80 to –210 (2011). Thus, the Board clearly has authority to hear a disciplinary case of a licensed social worker.

Forman argues the Board lacks jurisdiction or authority to prevent the family court from exercising its discretion in appointing a GAL or to prevent a family court appointee from

serving as a GAL. The Board has authority to "revoke, suspend, publicly reprimand, or otherwise restrict the practice or discipline a licensee when it is established that the licensee is guilty of misconduct as defined in this chapter." S.C. Code Ann. § 40–63–110 (2011). Here, the Board disciplined Forman and restricted her to supervised practice. It prohibited her from GAL work and independent practice. The family court, of course, "has absolute discretion in determining who will be appointed as a guardian ad litem in each case." S.C. Code Ann. § 63–3–810 (2010). However, the decision whether to accept such an appointment lies in Forman, who either may comply with the Board's restrictions or face the consequences of noncompliance.

Forman asserts her responsibilities as a GAL did not fall within the definition of the practice of independent social work because the definition includes mediation, which GALs are prohibited from engaging in and client education, which she asserts is "impossible" for a GAL as GALs do not have clients. Mediation and client education, however, are just two aspects encompassed by the broad and varied practice of independent social work. The practice of independent social work-clinical practice is defined as follows:

> the professional application of social work theory, knowledge, methods, principles, values, and ethics, and the professional use of self to restore or enhance social, psychosocial, or biopsychosocial functioning of individuals, couples, families, groups, and direct clinical needs of organizations and communities. . . . The practice of independent clinical social work includes case management, information and referral, mediation, client education, supervision of employees, consultation, research, advocacy, outcome evaluation, and expert testimony.

S.C. Code Ann. § 40–63–20 (25) (2011). This statute includes advocacy in the definition of independent clinical social work. *See Townsend v. Townsend,* 323 S.C. 309, 316, 474 S.E.2d 424, 428 (1996) ("Generally . . . a guardian ad litem must perform two distinct functions: (1) *ascertaining* the best interests of the ward, *i.e.,* gathering information; and (2) *advocating* to the family court the ward's best interests. Thus, the guardian ad litem's role is neither wholly that of an inquisitor nor wholly that of an advocate; rather, it is a hybrid role.").

Although Forman was not required to be a licensed social worker to be a GAL, she promoted herself with her credentials. *See* S.C. Code Ann. § 40–63–30 (2011) (prohibiting use of designations such as "Social Worker" or "Licensed Master Social Worker", or initials such as "LMSW" or "LISW" unless licensed). In written articles and continuing legal education presentations, Forman discussed the application of social work theory, knowledge, methods, and principles to GAL work.

■ Furthermore, our supreme court has recognized a professional may be disciplined for actions the professional took while not engaged in the practice of his or her profession. *See S.C. Real Estate Comm'n v. Boineau*, 267 S.C. 574, 579, 230 S.E.2d 440, 441–42 (1976). For example, it found "Even as members of the bar are subject to disciplinary procedures for conduct not strictly related to the practice of law, realtors may have their licenses revoked for conduct not strictly related to a transaction in which they are acting as broker." *Id.* at 579, 230 S.E.2d at 442.[3]

Forman also contends the Board could only sanction her if the family court found wrong-doing on her part. The family court's primary concern is the best interest of the child. *See Harris v. Harris*, 307 S.C. 351, 353, 415 S.E.2d 391, 393 (1992) ("Family Court is vested with the exclusive jurisdiction to ensure that, in all matters concerning a child, the best interest of the child is the paramount consideration."). The Board's primary interest is protecting the public through the licensure and discipline of social workers. *See* § 40–1–40. Just as a conviction by a court of competent jurisdiction is not a prerequisite to a board's exercise of its discretion in ordering a suspension of a license, a finding of wrongdoing by the family court is not required for the Board to discipline a social worker. *See Wagner v. Ezell*, 249 S.C. 421, 433, 154 S.E.2d 731, 737 (1967) (rejecting argument that the Board of Examiners of Optometry had no authority to act in suspending a

---

**3.** Forman failed to challenge the ALC's ruling the Board has the ability to discipline a licensee for behavior in activities not strictly related to the licensed social work practice. Accordingly, this ruling is the law of the case. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) ("[A]n unappealed ruling, right or wrong, is the law of the case.").

license until and unless a criminal conviction is brought about in a court of competent jurisdiction).

We hold the Board had authority to discipline Forman for her actions as a GAL and to issue the sanctions it imposed on Forman.

## CONCLUSION

Based on the foregoing analysis, the order of the ALC is **AFFIRMED.**

WILLIAMS, and THOMAS, JJ., concur.