20853

Kazuko K. STUTZ, Appellant, v. Jerry Earl FUNDERBURK, Respondent.

(252 S. E. (2d) 32)

*Jack W. Lawrence* and *James W. Shaw*, Spartanburg, *for appellant.*

*Burts, Turner, Hammett, Harrison & Rhodes,* Spartanburg, *for respondent.*

January 22, 1979.

LEWIS, Chief Justice:

This appeal involves a dispute over the custody of the six year old child of the parties. We take the events leading to the present appeal from the Statement in the Transcript.

Appellant, Kazuko K. Stutz, and respondent, Jerry Earl Funderburk, were married in 1972, having one child, Jason, born of this union. Subsequently, on July 23, 1976, appellant was granted a divorce from respondent on the grounds of physical cruelty. Prior to the divorce decree, appellant and respondent consented to an interlocutory order under the terms of which their son, Jason, was to be under the care, custody and control of the respondent-father until the appellant-mother was financially capable of caring for the child. The provisions of this consent order were incorporated in the final divorce decree.

As the result of a petition subsequently filed by appellant, the court determined in November 1976 that appellant was

financially capable of caring for her child and awarded custody to her.

Thereafter, respondent petitioned the court to change the custody of the child from appellant to him and, on June 20, 1977, an order was issued granting custody of the child to respondent based, mainly, upon a finding that appellant was then living with a Mr. Stutz while he was married to another person.

Appellant subsequently married Mr. Stutz and petitioned the court to return custody to her on the grounds of changed conditions, the tender years doctrine, and allegations that her present home would provide the more stable atmosphere and surroundings for her child. This last petition of appellant was denied on the ground that a sufficient change of conditions had not been shown to justify a change of custody. This appeal is from that order.

It is apparent that the decision of the lower court was based upon two main considerations, to-wit: (1) respondent has remarried and, through the help of his second wife, is able to care for the child, and (2) appellant had an illicit pre-marital affair with her present husband.

The record shows that both appellant and respondent have remarried. Each live in nice homes and their respective spouses exhibit care for the child. It is undisputed that appellant is now financially able to care for her son which was, by agreement of respondent, the only original requirement for appellant to have custody. But for the moral lapse of appellant with the person she has subsequently married, there is no fact or circumstance in this record upon which to base an order depriving the natural mother of custody of her now six (6) year old son, which was granted to her in the final divorce decree.

While the record discloses an illicit affair between appellant and her present husband, there is nothing to indicate that she, (now remarried, living in a nice home in Rock

Hill, with full time to devote to rearing her son) is not a fit and proper person to have custody. Where, as here, the moral lapse of the mother is not indicative of a continued course of conduct, we have held that its force is limited to what effect it has, either directly or indirectly, on the welfare of the child; and that "custody of a child is not granted a party as a reward or withheld as a punishment." *Davenport v. Davenport,* 265 S. C. 524, 220 S. E. (2d) 228.

■ The illicit relationship of appellant has ended through marriage; she is no longer employed and is free to devote her time to that of a housewife and mother. The record abundantly supports the conclusion that the mother is now morally fit, and motivated by the natural love of a mother in seeking to regain custody of her child of tender years. There is no fact shown to indicate that this six (6) year old child will not adjust to the love and care of his mother if custody is returned to her, as respondent originally agreed and the court ordered.

The record shows that the respondent works long hours and the child is being largely cared for by the stepmother.

Respondent argues, however, that, in order to warrant a return of custody to the appellant, she must show a change of circumstances affecting the best interests and welfare of the child; and that she has failed to make such showing. Reliance is also placed upon the rule that remarriage alone is insufficient to justify a change of custody.

We stated in *Sharpe v. Sharpe,* 256 S. C. 517, 183 S. E. (2d) 325, that

. . . the change of circumstances relied on for a change of custody must be such as would substantially affect the interest and the welfare of the child, not merely the parties, their wishes and convenience, and it is incumbent upon the moving party to show that the welfare of the child requires the court to ignore and set aside an agreement between the parties incorporated in the decree.

In determining whether a change of circumstances has been shown to warrant a change of custody, the facts leading up to and surrounding the present controversy must be considered.

The final divorce decree, ending the marriage of the parties, was granted to appellant because of respondent's physical cruelty and the decree approved the agreement of the parties that appellant, the mother, should have custody of the child as soon as she was financially able to care for it, no doubt recognizing the oft approved principle that, generally, all things being equal, a child of tender years should be with the mother. The condition of financial responsibility was subsequently met by appellant and she was granted custody. Custody was subsequently taken from her on the sole ground that she was living with a married man. In other words, this illicit affair constituted the change in circumstances upon which the court based the change of custody from appellant to respondent.

Appellant correctly argues that, if the illicit affair constituted a change of circumstances sufficient to justify depriving appellant of custody, then her marriage to her paramour and otherwise restoration of her moral fitness should constitute a strong factor in establishing a sufficient change of condition to require restoration to the appellant-mother of her prior conceded and court sanctioned right to custody of her child, then and now, of tender years.

While we held in *Smith v. Smith,* 261 S. C. 81, 198 S. E. (2d) 271, that remarriage *alone* is insufficient to justify a change of custody, we pointed out that remarriage was a factor to be considered and that the change in conditions consequent upon such remarriage might be so material as to justify or require the modification of the custodial decree. We think in this case, while not conclusive, the remarriage of appellant and the favorable home conditions created by it for the proper care of the child are prop-

erly considered along with all of the other circumstances in determining whether there has been shown a change in circumstances favorable to the best interests and welfare of the child.

A change in circumstances justifying a change in the ██ custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the child will be served by the change. Such showing has been made in this case. The order under appeal is accordingly reversed and the cause remanded for the entry of an order granting custody of the child of the parties to appellant, fixing visitation rights, and determining any other relevant issues.

RHODES and GREGORY, JJ., concur.

NESS and LITTLEJOHN, JJ., dissent.

NESS, Justice (dissenting):

I dissent, concluding there is no change of circumstances sufficient to warrant a custody change.

The party seeking a change in custody assumes the burden of proof and must show new facts and circumstances which substantially affect the interests and welfare of the child. *Powell v. Powell*, 256 S. C. 111, 181 S. E. (2d) 13 (1971); *Green v. Loveday*, S. C., 242 S. E. (2d) 441 (1978). Although the mother has remarried and moved to a nice home in Rock Hill, Mr. Funderburk has also remarried and lives in a nice home in Spartanburg. Most importantly, all indications are that Jason is happy and content in his present environment.

This case is closely analogous to *Jones v. Ard*, 265 S. C. 423, 219 S. E. (2d) 358 (1975), where the natural mother sought to have custody of a five year old boy transferred from the father to her. Both parties had remarried and were fit and proper persons to have custody of the child. In *Jones v. Ard*, as here, the testimony indicated the child was happy

with his father and stepmother and living in a stable home. Accordingly, we stated:

"Not every change of conditions warrants a change of custody. . . . [A] party seeking to upset custody of a child and bring about a change of custody must prove a change of conditions which substantially affect the interest and welfare of the child . . ." 265 S. C. at 425-26, 219 S. E. (2d) at 359.

As the factors listed by appellant to support her assertion of a material change in circumstances are equally present in the father's favor, I believe the trial court, which viewed the witnesses and heard their testimony, properly concluded custody should remain with respondent. The disruptive effect which a change in custody has upon a child is not justified where, as here, the child is happy and well adjusted in this present home. I would affirm.

LITTLEJOHN, J., concurs.