24484

Paul J. TOWNSEND, III and John C. Broome, Appellants v. Viola W. TOWNSEND and Providencia Townsend, Respondents.
(474 S.E. (2d) 424)

Supreme Court

*John C. Broome,* of *Broome & Broome,* Columbia, *for Appellants.*

*Deena Smith McRackan,* Charleston, *for Respondents.*

Heard June 18, 1996.

Decided Aug. 19, 1996.

TOAL, Justice:

In this action for reduction of his child support obligation, Appellant Paul Townsend ("Father") appeals the family court's denials of a motion for continuance and of a motion to disqualify herself as judge. The attorney who initially represented Father in the action below, Appellant John Broome ("Lawyer"), appeals the family court's rulings removing him as Father's counsel and granting attorney's fees in connection with a motion to reconsider Lawyer's removal from the case. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Father brought this action against Respondent Viola Townsend ("Mother") for a reduction of his child support obligations. Father was represented by lawyer. Mother counterclaimed for college support for her daughter Providencia ("Daughter"), who was attending the University of South Carolina. Daughter was later joined in the action.

A final hearing in the matter began on August 15, 1994. That day, the judge denied Father's motion for a continuance to complete discovery and his motion for the judge to recuse herself because of her childhood acquaintance with Mother. Later in the day, after learning Lawyer had served as guardian ad litem for Daughter in a custody proceeding a few years earlier, the judge on her own motion removed Lawyer as Father's counsel and stopped the hearing.

In October 1994, new counsel for Father was substituted with Lawyer's consent. In early December 1994, the hearing on the merits of the child support and college support action was held. Also in early December, Lawyer moved on his own behalf for reconsideration of the judge's order removing him from the case. The judge found Lawyer lacked standing to bring the motion. The judge also granted Mother attorney's fees, to be paid by lawyer, for her expenses in defending the motion for reconsideration.

Attorney and Father both appeal.

## LAW/ANALYSIS

### A. *Father's Appeal*

Father argues the family court erred in denying his motion for a continuance of the August 15 hearing and in denying his motion for the judge to recuse herself. We find that both these issues are procedurally barred. Furthermore, Father's arguments lack substantive merit.

A denial of a motion for disqualification of a judge is an interlocutory order not affecting the merits and, thus, is reviewable only on appeal from a final order. *Rogers v. Wilkins*, 275 S.C. 28, 267 S.E. (2d) 86 (1980). Father has not appealed from the final order; in fact, the Record contains no copy of the final order. Accordingly, we regard Father's appeal as interlocutory and need not reach this question. In any case, the judge conducted a full hearing on this issue. The Record

contains no evidence of bias, so there is no substantive error here. *See, e.g., Murphy v. Murphy*, — S.C. —, 461 S.E. (2d) 39 (1995) (finding no error in judge's refusal to recuse himself in action in which counsel for one of the parties had represented judge in the past, where judge's factual findings were supported by the Record); *Rogers*, 275 S.C. 28, 267 S.E. (2d) 86 (finding no error in judge's failure to recuse himself from action notwithstanding fact that defendant had, in the past, sued judge under § 1983; because Record was "totally void" of any evidence of bias or prejudice stemming from the § 1983 action, court found no error).

Like an order denying a motion for disqualification of a ▋ judge, an order denying a motion for a continuance is an interlocutory order not affecting the merits and, thus, is not immediately appealable. *E.g., Crout v. South Carolina Nat'l Bank*, 278 S.C. 120, 293 S.E. (2d) 422 (1982). Therefore, we need not reach this issue. In any case, we will not set aside a judge's ruling on a motion for a continuance unless it clearly appears there was an abuse of discretion *to the prejudice of the movant. E.g., Bozemand v. State*, 307 S.C. 172, 414 S.E. (2d) 144 (1992); *Hudson v. Blanton*, 282 S.C. 70 316 S.E. (2d) 432 (Ct. App. 1984). After the judge determined Lawyer should be removed from the case, the judge stopped the hearing. Although new counsel for Father was appointed in early October, the final hearing was held *entirely anew* in early December. Father's new counsel had ample time to complete any necessary discovery. The Record shows no prejudice.

### B. *Lawyer's Appeal*

Lawyer argues the family court judge erred in removing him from the case and in granting Wife attorney's fees in connection with Lawyer's motion to reconsider his removal as Father's counsel. We disagree.

### 1. Standing

After the family court ordered Lawyer to cease his representation of Father, Lawyer moved *on his own behalf* for reconsideration of the family court order. The family court denied Lawyer's motion, finding he lacked standing to challenge the order. Lawyer argues that his pecuniary interest in continuing to represent his client vested him with standing. We disagree.

To have standing, one must have a personal stake in the subject matter of the lawsuit; *i.e.*, one must be the "real party in interest." *E.g., Bailey v. Bailey*, 312 S.C. 454, 441 S.E. (2d) 325 (1994). A real party in interest is one who "has a real, actual, material or substantial interest in *the subject matter of the action*, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the action." *Id.* at 458, 441 S.E. (2d) at 327 (emphasis added).

In *Bailey*, two attorneys represented a wife in divorce proceedings. The family court approved a divorce settlement between the husband and wife, but shortly thereafter, the husband brought an action for relief from the divorce settlement order. Eventually, the woman discharged her two attorneys and retained different counsel. The husband and wife then entered into a different agreement "restructuring" the prior agreement. The family court approved this new agreement.

The wife's former attorneys then moved the family court to reconsider its approval of the new agreement on the ground that the husband and wife's failure to give the attorneys notice of the agreement substantially prejudiced the attorneys' interest in collecting their fees. The family court allowed the attorneys to intervene, but this Court reversed. The Court found that "the real interest lies in the parties in the divorce action" and that the attorney's interest in protection of their fee was "peripheral" and "not the real interest at stake." *Id.*

*Bailey* controls here. The present lawsuit concerns the rights and responsibilities of Mother, Father, and Daughter as pertains to child support and college support. The real interest that is implicated by the judge's removal of Lawyer as Father's counsel is Father's interest in having the attorney of his choice, not Lawyer's interest in making more money. Father was quite free to move for reconsideration of the family court's order removing Lawyer. He did not. Lawyer has no independent right to do so; therefore, the family court correctly found Lawyer lacks standing to challenge his removal.

Additionally, Lawyer signed a form consenting to the substitution of other counsel. Given his consent to the substitution, we cannot see how Lawyer can now complain about his removal from the case.

## 2. Conflict of Interest

Lawyer had served as Daughter's guardian ad litem in a custody proceeding a few years prior to Father's bringing this action for reduction of child support. The family court judge found that Lawyer's service as Daughter's guardian ad litem created a conflict of interest that prevented Lawyer from representing Father in this action.

Lawyer argues the family court erred in holding he had a conflict of interest and in removing him as Father's counsel. Although, as noted above, Lawyer lacks standing to make this argument, we reach the issue in order to clarify for the Bench and Bar some of the ethical and other responsibilities of attorney guardians ad litem in the context of custody or support actions.[1] We find Lawyer had a conflict of interest in representing Father after having served as Daughter's guardian ad litem in a custody case. Accordingly, the family court's ruling on Lawyer's removal was correct.

Rule 1.9(a) of the Rules of Professional Conduct, Rule 407, SCACR, provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation.

Lawyer argues this rule is inapplicable for two reasons: (1) there is no attorney-client relationship between a child and the child's guardian ad litem; and (2) the present action, which concerns child support and college support, is not "substantially related" to the custody action in which Attorney served as guardian ad litem for Daughter.

> Lawyer is technically correct that guardians ad litem do not have attorney-client relationships with the children whose best interests they seek to protect. *See,*

---

[1] This discussion applies only to attorney guardians ad litem in child custody and support actions. The responsibilities of guardians ad litem is abuse and neglect proceedings are prescribed, in large part, by statute. *See* S.C. Code Ann. §§ 20-7-121 to 20-7-129 (Supp. 1995). Another kind of guardian may work to protect a minor's interest in trust funds or in real or personal property. We see no need in this case to address the duties of such guardians.

*e.g., Jennings v. Dargan,* 308 S.C. 317, 417 S.E. (2d) 646 (Ct. App. 1992) ("[A] guardian ad litem functions as a representative of the *court which appointed him....*"). Nevertheless, a guardian ad litem's ultimate responsibility is to assist the Court in protecting the best interests of the child. *See, e.g., Shainwald v. Shainwald,* 302 S.C. 453, 395 S.E. (2d) 441 (Ct. App. 1990). The ways in which a guardian ad litem accomplishes that ultimate responsibility will vary depending on the particular facts and circumstances of the case. Generally, however, a guardian ad litem must perform two distinct functions: (1) *ascertaining* the best interests of the ward, *i.e.,* gathering information; and (2) *advocating* to the family court the ward's best interests. Thus, the guardian ad litem's role is neither wholly that of an inquisitor nor wholly that of an advocate; rather, it is a hybrid role. *See* Roy T. Stuckey, *Guardians ad Litem as Surrogate Parents: Implications for Role Definition and Confidentiality* [hereinafter "Stuckey"], 64 Fordham L. Rev. 1785, 1796-97 (1996) ("When we try to categorize guardians ad litem as primarily advocates or fact finders, we ignore the realities of how they actually function in practice. The results of a study reported in 1977 demonstrate that guardians ad litem perform a variety of roles, even when the guardians identify themselves primarily as advocates or fact finders...."). Particularly in performing his investigatory function, a competent guardian ad litem hopes to gain the trust and confidence of the child he seeks to protect and of the child's family.

In our view, to allow a guardian ad litem to represent a parent in a proceeding substantially related to the action for custody or visitation would completely undermine the trust and confidence necessary to an informed recommendation by the guardian ad litem. Frequently in custody or support actions, parents already have reasons not to communicate candidly with a child's guardian ad litem. If children or their parents knew the guardian might later use the information gathered from an investigation to advance a position that might be *detrimental* to the children, all parties might be even more reluctant to discuss matters candidly with the guardian ad litem. The Wisconsin Court of Appeals has found that although a child usually should not be considered a "client" of a guardian ad litem, the child will be considered a client for pur-

poses of the rules relating to attorney conflicts of interest. *See In re Steveon R.A.*, 196 Wis. (2d) 171, 537 N.W. (2d) 142 (Ct. App. 1995) (Rule 1.7 applies to attorney guardians ad litem; although guardian does not represent child, guardian represents child's best interest and rule should therefore apply). We agree that the conflict of interest rules should apply to attorney guardians ad litem.

The matter at issue in this case is substantially related to the prior matter. In determining whether the matter is "substantially related," one should consider, among other things, whether the affected lawyer "would have or *reasonably could have* learned confidential information in the first representation that would be of significance in the second." 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 1.9:104, at 293 (1996). The confidentiality rationale underlying Rule 1.9 is not wholly apposite here, because a guardian ad litem has no absolute duty of confidentiality to his ward. *See State v. Good*, 308 S.C. 313, 417 S.E. (2d) 643 (Ct. App. 1992) (declining to find a testimonial privilege between guardian ad litem and his ward except where recognized by statute), *cert. denied*, 1992; *see also* Stuckey, *supra* (noting that confidentiality of communications between guardians ad litem and wards is not protected in most jurisdictions; proposing confidentiality rules which provide helpful analysis but are not adopted herein). In fact, at times the guardian ad litem may well have a responsibility to communicate to the Court information given him by his ward.

Nevertheless, in evaluating the lawyer guardian ad litem's potential conflict of interest in subsequent representations, it seems reasonable to find that matters are "substantially related" when the guardian ad litem reasonably could have gained information in the first matter that will be relevant in the second matter. Such a construction of the phrase "substantially related" furthers the policy rationale of encouraging candid disclosure to the guardian ad litem by all parties to a custody dispute. Here, although he claims none of the same information was actually used in the two matters, Lawyer should have recognized the risk that information he gained during the custody matter in which he was Daughter's guardian ad litem might prove relevant to the

child support claim and particularly to the college support claim in the action in which he represented Father.

In addition to the formal ethical rules concerning conflicts of interest, other concerns justify Lawyer's removal from the case. A ward of an attorney guardian ad litem should not have to encounter that person in subsequent litigation in which the former guardian ad litem is representing anyone whose interests are potentially or actually adverse to the ward's. A guardian ad litem has the duty of advocating the best interests of his ward and should not, in future proceedings, represent parties with interests opposed to the best interests of his former ward. To do so is unseemly and inappropriate. We can perceive no greater conflict with one's duties to advocate the best interests of a child than to represent the parent of that child against the child herself in a future proceeding. The family court judge had ample authority, and, in fact, a duty to remove Lawyer from his representation of Father. The family court must ensure the integrity of the proceedings before it. There was no error.

### 3. Attorney's Fees

Finally, Lawyer argues the family court erred in assessing attorney's fees against him in connection with his motion to reconsider the family court order removing him as Father's counsel. We disagree.

Under S.C. Code Ann. § 20-7-420(2) (Supp. 1995), the family court has the authority to order the payment of attorney's fees in marital litigation. Actions for child support or modification of child support fall within this rule. *See, e.g., Golden v. Gallardo*, 295 S.C. 393, 368 S.E. (2d) 684 (Ct. App. 1988) (approving attorney's fees in post-divorce action relating to visitation and child support). Lawyer's motion for reconsideration arose directly out of Father's action for reduction of child support. In our view, the family court judge had ample authority to award attorney's fees.

Furthermore, although the order awarding attorney's fees does not contain specific findings of fact as to each of the factors enumerated in *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E. (2d) 313 (1991), reversal is not warranted as long as each factor is supported by evidence in the Record. *See Blumberg v. Nealco, Inc.*, 310 S.C. 492, 427 S.E.

(2d) 659 (1993). Here, the evidence of Record supports the amount of the award.

### CONCLUSION
For the foregoing reasons, the decision of the family court is AFFIRMED.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.