# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Lindsay Allison Sellers, Appellant,

v.

Douglas Anthony Nicholls, Respondent.

Appellate Case No. 2017-001108

———————

Appeal From Greenville County
Tarita A. Dunbar, Family Court Judge

———————

Opinion No. 5754
Submitted April 1, 2020 – Filed August 5, 2020
Withdrawn, Substituted, and Refiled December 9, 2020

———————

## AFFIRMED

———————

Lindsay Allison Sellers, of Lexington, pro se.

Marcus Wesley Meetze, of Law Office of Marcus W.
Meetze, LLC, of Simpsonville, for Respondent.

———————

**LOCKEMY, C.J.:** In this child custody action, Lindsay Allison Sellers (Mother)
appeals the family court's order denying her motion for a continuance, finding it
was in the children's best interest to be placed with Douglas Anthony Nicholls
(Father), and granting Father $15,000 in attorney's fees. We affirm.

## FACTS/PROCEDURAL HISTORY

Mother and Father married in August 2006. During their marriage, they lived in
Greenville and had two children: a daughter, who is now twelve years old

(Daughter) and a son, who is now eight years old (Son) (collectively, Children). Mother and Father separated in 2012 and divorced on June 6, 2014. The original final order (the Original Order) incorporated an agreement that provided for joint legal custody and joint week-to-week physical custody. It ordered that neither party pay child support; however, Mother was to pay for medical insurance and childcare costs. The Original Order also restrained the parties from having Children overnight in the presence of members of the opposite sex.

One year later, Mother filed a complaint requesting sole custody and that Father receive supervised visitation with no overnights. Father filed an answer and counterclaim alleging there had been a change in circumstances and he should be awarded sole custody of Children, child support, and attorney's fees. Thereafter, Mother filed a motion for temporary relief requesting sole custody of Children. The family court ordered the Original Order remain in effect.

The guardian ad litem (the GAL) subsequently filed a second motion for temporary relief after Mother relocated to Columbia. The family court then issued a temporary order granting Mother custody, finding the move was for legitimate purposes and based on Mother's reported ability to make more money if she was promoted to a management position. The temporary order granted Father standard visitation, but it did not address child support.

On June 13, 2016, Mother's first attorney was relieved by order of the family court. On October 14, 2016, Mother filed an emergency motion for temporary relief requesting child support, which included Mother's affidavit stating she informed her attorney that Son was having stomach pain, issues defecating, and had wet the bed multiple times. Her affidavit stated her attorney believed these were red flags of sexual abuse and she asked her attorney to conduct a forensic interview. The affidavit detailed that during Son's forensic interview, he disclosed "something" to Mother's attorney that was then reported to law enforcement. The South Carolina Department of Social Services (DSS) conducted an investigation. DSS determined the allegations were unfounded.

Father filed a motion to disqualify Mother's attorney, arguing she had become a necessary fact witness regarding custody based on her forensic interview of Son. Neither Mother nor her attorney attended the hearing on Father's motion to disqualify. At the hearing, the GAL and Father asked the court not to continue the final hearing based on the disqualification. In its November 17, 2016 order, the family court granted Father's motion and stated, "The disqualification of [Mother's]

counsel shall not, under any circumstances, be a basis for continuing the trial in this matter . . . . This case remains set for trial on December 13[, 2016]."

On November 28, 2016, Mother filed a Rule 59(e), SCRCP motion to reconsider, arguing the disqualification created substantial hardship because she would be unable to find an attorney in time for the hearing. The family court did not rule on the motion. On December 7, 2016, Mother and her disqualified attorney signed a consent order relieving Mother's attorney as counsel. In the consent order, Mother agreed she would "represent herself pro se in this action in the event she is unable to obtain counsel."

At the outset of the December 13, 2016 hearing, Mother requested to continue the hearing based on her attorney's disqualification. The family court stated the disqualification order indicated "that this case remains set for trial and shall not be continued" and "I believe only the[] Administrative Judge[] can continue this case." Mother stated she filed a motion for reconsideration of the disqualification order, but there had been no resolution of that motion. The family court reiterated it could not continue the case because the previous order stated the case "shall not" be continued.

Mother testified that during the marriage she worked as a manager at Walmart and earned $54,500 a year. Mother explained she was selected to be promoted but needed to move to a Columbia store first. She stated she took a new position in Columbia but did not receive a raise.

Mother explained Father hired a private investigator to place a GPS tracking device on her car while she was at work, and a customer reported that it was a bomb. She recalled she took medical leave from Walmart because Father continually distracted and stalked her. Mother testified that after she left her employment with Walmart, she worked for her former attorney from September 2016 until November 2016. She explained she then took a job working for a plastic surgeon making $39,000 a year, received rental income of $350 a month, and earned another $500 a month from work as a guardian ad litem.

Mother stated Father made it difficult to coordinate the drop-off of Children and other plans; however, Mother also stated the week-to-week visitation was a nonissue and worked. Mother admitted she violated the Original Order by having her boyfriend stay overnight when Children were with her. Mother asserted Father failed to pay Children's medical bills as required by the Original Order.

Connie Drake, Mother's stepmother, testified she and George Sellers, Mother's father, (Grandfather) (collectively, Grandparents) allowed Mother to move into their home in Lexington County. She explained that during Mother's stay, Grandfather was the primary caretaker for Children and was responsible for picking them up from daycare, providing them dinner, and putting them to bed while Mother was at work. Drake stated Mother would get into irrational screaming matches with Children. She testified Mother left Children in Grandparents' care so she could travel to Europe and stay overnight with her boyfriend. Drake also stated Mother and Children spent nights at Mother's boyfriend's house. She explained Mother stopped letting Children see her and Grandfather as of February 2016. She testified Father arranged for Children to visit with Grandparents, and she believed placement with Father was in Children's best interest because Mother was unable to discipline them.

Grandfather testified Mother and Children argued every morning while at his house. He recalled that on one occasion, Mother got into an argument with Children because they did not want to stay the night alone with Grandfather while she spent the night with her boyfriend. He recalled Children cried for hours following Mother's departure, and Mother refused to come back to get them. Grandfather recalled Children behaved well around Father and enjoyed spending time with him. He testified he and Father made amends following the divorce, and Father allowed Grandparents to see Children after Mother stopped letting them visit. Grandfather stated he was Children's primary caregiver at least two days a week.

Father testified he worked as a school resource officer on weekdays from 7:30 a.m. to 4:00 p.m. Father explained he hired a private investigator who placed a GPS tracking device on Mother's car after she refused to disclose where she lived. He testified Mother filed an order of protection in Lexington County, which was dismissed. Father stated he never went to Mother's work following the divorce. Father testified Mother failed to inform him about any of Son's ADHD medical appointments or prescriptions. He explained he was on a waiting list for a three-bedroom apartment and expected to be able to move into that apartment two weeks after the hearing. Father stated Mother did not inform him she was moving, and he did not find out until six months after she moved when she filed this action. He believed Mother moved to Columbia to be closer to her former boyfriend. Father testified the temporary order removing Children from Greenville hurt his relationship with Children. He explained Mother failed to inform him about Children's extracurricular activities.

Father explained that after Mother accused him of sexually abusing Son, the results of law enforcement's forensic interview showed "no signs of sexual abuse in [Son]." He believed Mother and her attorney accused him of sexual abuse after Son had "grabbed himself in the anal area several times during a soccer game, complain[ed] of stomach hurting, dance[d] around when he ha[d] to defecate and began to wet his bed." Father stated he believed Son acted this way because of his ADHD medication, which caused constipation. Father recalled Mother initially failed to inform him that Son was taking medication and failed to provide the medication during his week of custody. He testified he never failed to pay medical bills as Mother alleged. Father stated Mother's behavior was erratic and unpredictable, she had moved multiple times since the temporary hearing, and her changing romantic relationships created instability in Children's lives. He testified placement with him was in Children's best interest because he had remained consistent in how he lived, worked a schedule that matched theirs, and continued to live in Greenville where Children had grown up and developed friends. Father testified the week-to-week arrangement had worked well for Children. Father requested $25,000 in attorney's fees, and his attorney's fees affidavit was admitted without objection.

Karen Sykes, Children's maternal grandmother, testified she lived in Aiken but took a job in Richland County to be closer to Children. She stated Children had been living a consistent life and doing well in Columbia. Sykes recalled Children had many friends and participated in extracurricular activities in Columbia.

Grace Morgan, Children's former daycare provider in Greenville, testified that on one occasion, Mother dropped off Children and said she was going to work, but instead, she left on an overnight trip to Disney World with her boyfriend. She stated Mother did not leave her any clothes for Children, and Father had to bring them clothing and pick them up at night. Morgan testified Father was very caring and worked to build memories with Children. Jennifer Worley, Mother's supervisor at Walmart, testified Mother was no longer employed with Walmart because she chose not to return after taking medical leave.

The GAL testified Father's one-bedroom apartment was clean and organized, but she admitted Children would do better with separate bedrooms. The GAL stated she had no concerns with Mother's home and had no recommendation for placement. The GAL described Mother as argumentative and dismissive of anyone who disagreed with her. She stated she had concerns about Mother's overnight visits with her boyfriend and that Mother changed Children's daycare five times since the Original Order. The GAL explained she was concerned that

both parents would likely struggle financially.  The GAL stated she did not believe week-to-week placement was in Children's best interest.

The family court found there had been "a change in circumstances as far as the parties remaining in joint physical custody" because the parents did not get along.  The family court also found Mother failed to meet her burden that it was in Children's best interest to remain in Columbia.  Specifically, the family court found it was not in Children's best interest for Mother to end their relationships with Grandparents; change their daycare five times; fail to properly parent or discipline Children; or fail to care for Children by handing them off to Grandfather because she wanted to spend the evening with her boyfriend.  The family court also found it was not in Children's best interest for Mother to fail to inform Father about Son's medication as the temporary order required, which the court believed possibly led to the report of sexual abuse and DSS investigation.  The family court found Mother's father and stepmother's testimony was credible and found Father was commendable for his ability to put aside his differences and mend his relationship with Grandfather for the benefit of Children.  The family court further found Morgan's testimony that Father was good with Children was credible.

The family court granted parents joint custody of Children and granted Father primary placement.  It ordered alternating weekend visitation, ordered Mother to pay $689.00 per month in child support and $15,000 in attorney's fees within ninety days.  The family court weighed both the *E.D.M.*[1] and *Glasscock*[2] factors.

Father filed a Rule 59(e), SCRCP motion, which the family court granted, altering child support to $963.00 a month.  Mother also filed a Rule 59(e) motion, arguing the family court erred by (1) denying her motion to continue, (2) failing to rely on the temporary order, (3) failing to find Father violated the order by stalking and harassing her, (4) failing to grant her sole custody, (5) failing to consider Father did not provide child support for the last year, and (6) awarding Father attorney's fees.  The family court dismissed Mother's motion as untimely.  This appeal followed.

**ISSUES ON APPEAL**

---

[1] *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).
[2] *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

1.  Did the family court abuse its discretion by denying Mother's request for a continuance?

2.  Did the family court err by awarding Father primary custody of Children?

3.  Did the family court err by awarding Father $15,000 in attorney's fees to be paid in ninety days?

**STANDARD OF REVIEW**

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). "Our standard of review, therefore, is *de novo*." *Id.* "[W]hile this court has the authority to find facts in accordance with its own view of the preponderance of the evidence, 'we recognize the superior position of the family court . . . in making credibility determinations.'" *Lewis v. Lewis*, 400 S.C. 354, 361, 734 S.E.2d 322, 325 (Ct. App. 2012) (quoting *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655). "Further, de novo review does not relieve an appellant of his burden to 'demonstrate error in the family court's findings of fact.'" *Id.* (quoting *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655). "Consequently, the family court's factual findings will be affirmed unless [the] appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court." *Id.* (second alteration in original) (quoting *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655).

When "reviewing a family court's evidentiary or procedural rulings," appellate courts apply "an abuse of discretion standard." *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018). "Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings." *Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019). A motion for a continuance is a procedural matter involving the progress of a case. *See* Rule 40(i)(1), SCRCP. "An abuse of discretion occurs either when a court is controlled by some error of law, or where the order is based upon findings of fact lacking evidentiary support." *Patel v. Patel*, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004).

**LAW/ANALYSIS**

**I.  Continuance**

Mother argues the family court abused its discretion when it denied her motion for a continuance. She contends she demonstrated good cause for the continuance because her attorney was disqualified from representing her four weeks prior to the final hearing and she had not had sufficient time to secure new counsel for the hearing. Mother asserts the family court never ruled on her motion to reconsider her attorney's disqualification, which prohibited her from obtaining new counsel for the hearing. We disagree.

"As actions are called, counsel may request that the action be continued. If good and sufficient cause for continuance is shown, the continuance may be granted by the court." Rule 40(i)(1), SCRCP. "A failure to exercise discretion amounts to an abuse of that discretion." *Samples v. Mitchell*, 329 S.C. 105, 112, 495 S.E.2d 213, 216 (Ct. App. 1997). "There is a long-standing rule in this State that one judge of the same court cannot overrule another." *Charleston Cty. Dep't of Soc. Servs. v. Father*, 317 S.C. 283, 288, 454 S.E.2d 307, 310 (1995).

> [T]he prior order of one Circuit Judge may not be modified by the subsequent order of another Circuit Judge, except in cases where the right to do so has been reserved to the succeeding Judge, when it is allowed by rule or statute, or when the subsequent order does not substantially affect the ruling or decision represented by the previous order.

*Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 410, 581 S.E.2d 161, 168 (2003) (quoting *Dinkins v. Robbins*, 203 S.C. 199, 202, 26 S.E.2d 689, 690 (1943)). However, "an interlocutory order [that] merely decides some point or matter essential to the progress of the cause, collateral to the issues in the case, is not binding as the law of the case, and may be reconsidered . . . by the court before entering a final order on the merits." *Shirley's Iron Works, Inc. v. City of Union*, 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013) (quoting *Weil v. Weil*, 299 S.C. 84, 89, 382 S.E.2d 471, 473 (Ct. App. 1989)). "[A]n order [ruling upon] a motion for a continuance is an interlocutory order not affecting the merits [of a case]." *Townsend v. Townsend*, 323 S.C. 309, 313, 474 S.E.2d 424, 427 (1996). "In any case, we will not set aside a judge's ruling on a motion for a continuance unless it clearly appears there was an abuse of discretion *to the prejudice of the movant*." *Id.*

In *Varn v. Green*, our supreme court reversed the circuit court's denial of a motion to continue the trial because the court failed to exercise its discretion. 50 S.C. 403,

27 S.E. 862 (1897). At trial, the appellant moved for a continuance because his two attorneys were sick: one was confined to bed rest and the other could barely speak. *Id.* at 403, 27 S.E. at 862. The trial court denied the motion stating "that under such circumstances it was his custom to require clients to employ other counsel." *Id.* Another attorney volunteered to represent the appellant, and the trial proceeded the next day. *Id.* On appeal, our supreme court found new counsel was unprepared, which prejudiced the appellant. *Id.* Our supreme court reversed the trial court, ordered a new trial, and held the appellant was entitled to a continuance. *Id.* Our supreme court explained "that the circuit judge abused his discretion in forcing the case to trial under the circumstances." *Id.*

Here, Mother requested a continuance at the beginning of the hearing, which the family court denied, relying on the order disqualifying Mother's counsel. The order stated Mother's attorney's disqualification "shall not" under any circumstances be a basis for continuing the trial. The family court stated *only* the administrative judge could continue this case.

We hold the family court judge who decided the disqualification could not usurp the discretion of the family court judge hearing the case at trial. First, Rule 40(i)(1), SCRCP, provides counsel may request a continuance "as actions are called." We hold the "as" in "as actions are called" means "at the time" actions are called, which indicates the discretion to grant a continuance rests with the judge currently hearing the case, and a preceding judge cannot usurp this discretion.

Second, an order granting or denying a continuance is an interlocutory order that does not affect the merits of a case; instead, a continuance delays the progress of a case and the discretion to grant or deny the motion vests with the judge with whom the case is before. *See Townsend*, 323 S.C. at 313, 474 S.E.2d at 427 (providing an order ruling upon on a motion for a continuance is an interlocutory order not affecting the merits of a case). Here, the substantial issue addressed in the order was counsel's disqualification, and the prospective denial of a motion for a continuance was therefore an interlocutory order. As such, this order could not prevent the family court from considering Mother's motion to continue. Therefore, the family court erred by determining it was bound by such order and abused its discretion by failing to exercise any discretion in ruling upon Mother's motion for a continuance.[3] *See Samples*, 329 S.C. at 112, 495 S.E.2d at 216 ("A failure to

---

[3] After a thorough review of the record it appears the denial of the motion for a continuance occurred after the case was older than 365 days; thus, it is possible the family court denied the motion based on the 365-day rule. *See RE: Family Court*

exercise discretion amounts to an abuse of that discretion."); *Varn*, 50 S.C. at 403, 27 S.E. at 862 (holding the trial court erred by relying on custom rather than exercising its discretion in denying a motion for a continuance).

Nevertheless, we find Mother was not prejudiced because the family court reached the correct result when it denied Mother's request for a continuance. During the course of this litigation, Mother was represented by two attorneys: the first moved to be relieved because Mother failed to pay her attorney's fees, and Mother relieved the second attorney following the attorney's disqualification. Further, Mother signed a consent order seven days prior to the final hearing on the merits of the custody issue, which stated she would represent herself pro se if she were unable to find new counsel. Based on the foregoing, we find Mother failed to show "good and sufficient cause" to grant a continuance. *See* Rule 40(i)(1), SCRCP ("If good and sufficient cause for continuance is shown, the continuance may be granted by the court."). Thus, we affirm the family court's ruling denying Mother's request for a continuance. As to Mother's argument the family court failed to rule on her Rule 59(e) motion to reconsider the disqualification of her counsel, we find this issue is moot because she signed a consent order relieving counsel. *See Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001) ("An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy.").

## II.    Child Custody

Mother argues the family court erred in awarding primary custody to Father. She asserts her move from Greenville to Columbia was a substantial change of circumstances warranting a review of Children's best interests. We disagree.

A parent's relocation from one city to another when a true joint physical custody arrangement is in place is an issue of first impression in this state. We hold, as other jurisdictions have, that when one parent relocates when there is joint physical and legal custody, we must first address a modification of primary physical custody. *See Potter v. Potter*, 119 P.3d 1246, 1249 (Nev. 2005) (providing a

---

*Benchmark*, S.C. Sup. Ct. Order dated Aug. 27, 2014. ("Once a case older than 365 days has been scheduled for a final hearing, only the Chief Administrative Judge for the circuit or county may continue it, even if the request for continuance is received by the assigned judge during the week of trial."). However, the family court did not note in the record that it relied on the 365-day rule and neither party raised the rule on appeal.

relocation from joint physical custody is first governed by the law modifying primary physical custody); *Voit v. Voit*, 721 A.2d 317, 326 (N.J. Super. Ct. Ch. Div. 1998) (holding when a father requested the right to remove his son to another state and a change in custody, the case was "first and foremost a request for modification of [custody]"); *Maynard v. McNett*, 710 N.W.2d 369, 376 (N.D. 2006) (providing that before a motion to relocate can be granted in joint custody cases, the court must "first determine[ that] the best interests of the child require a change in primary custody to that parent").

Relocation from joint physical custody is inherently a change to primary physical custody because one parent must lose the primary physical custody that was granted in the Original Order. Thus, we must determine whether there was a substantial change of circumstances affecting Children's welfare that occurred after the entry of the Original Order. "The change of circumstances relied on for a change of custody must be such as would substantially affect the interest and welfare of the child." *Latimer v. Farmer*, 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004). "A change in circumstances justifying a change in the custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the children would be served by the change." *Id.* (quoting *Stutz v. Funderburk*, 272 S.C. 273, 278, 252 S.E.2d 32, 34 (1979)).

When a change in custody is sought, the moving party "must establish the following: (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child." *Id.* "[A] change in custody analysis inevitably asks whether the transfer in custody is in the child's best interests." *Id.* "The presumption against relocation is a meaningless supposition to the extent a custodial parent's relocation would, in fact, be in the child's best interest." *Id.* Thus, the overriding consideration as in all child custody matters is the children's best interests. *Id.*

First, we agree with the family court's finding there was a substantial change in circumstances. Specifically, the parties were not amicable toward each other and were unable to continue joint physical custody because they no longer lived near each other. We note relocation of a custodial parent alone is not enough to constitute a substantial change in circumstances. *See Walrath v. Pope*, 384 S.C. 101, 105-06, 681 S.E.2d 602, 605 (Ct. App. 2009) ("A change in the custodial parent's residence is not in itself a substantial change in circumstances affecting the welfare of the children that justifies a change in custody."). However, because both parents had true joint physical custody when Mother moved to Columbia, the

relocation rendered compliance with the Original Order impossible. Thus, Mother's relocation to Columbia was a substantial change in circumstances.

Next, we must determine what custodial arrangement is in Children's best interest. Although South Carolina courts have not outlined the criteria for evaluating a child's best interests when a custodial parent relocates, our supreme court has acknowledged several factors that other states have considered when making this determination. *See Latimer*, 360 S.C. at 382–83, 602 S.E.2d at 35–36. Our supreme court weighed the following factors from the New York Court of Appeals: (1) each parent's reason for seeking or opposing the relocation; (2) the relationship between the children and each parent; (3) the impact of the relocation on the quality of the children's future contact with the non-custodial parent; (4) the economic, emotional, and educational enhancements of the move; and (5) the feasibility of preserving the children's relationship with the non-custodial parent through visitation arrangements. *Id.* (citing *Tropea v. Tropea*, 665 N.E.2d 145, 148 (N.Y. 1996)). Our supreme court also weighed the following factors from the Pennsylvania Superior Court: (1) the economic and other potential advantages of the move; (2) the likelihood the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a whim of the custodial parent; (3) the motives behind the parent's reasons for seeking or opposing the move; and (4) the availability of a realistic substitute visitation arrangement that will adequately foster an ongoing relationship between the non-custodial parent and the children. *Id.* at 383, 602 S.E.2d at 36 (citing *Gancas v. Schultz*, 683 A.2d 1207, 1210 (Pa. Super. Ct. 1996)).

Applying these factors and considering Children's overall best interests, we affirm the family court's order granting Father primary physical custody.

Here, the record shows both parents had strong, loving relationships with Children. Although Mother's motive for relocating from Greenville to Columbia was to reap the financial benefit of a promotion at Walmart, we must acknowledge this benefit did not accrue. Mother blamed Father for the fact she no longer worked at Walmart; however, Mother's manager testified her employment was terminated because she chose not to return after taking medical leave and that Mother could be rehired at Walmart. Thus, Mother failed to show Children would see the economic benefit, which was her basis for the move.

The GAL expressed concern that Mother was argumentative, had overnight visitation with her boyfriend in violation of the Original Order, and changed Children's daycares five times since the Original Order. We find it especially

troubling that Mother was willing to violate the family court orders, failed to inform Father of Son's medication, and failed to provide that medication when Son was in Father's custody. We agree with the family court that Mother's decision to date following the divorce should be given no weight. Nevertheless, the record indicates Mother placed her personal interests ahead of Children's by choosing to spend time with her boyfriend during specific instances when Children needed her. We find these acts were not in Children's best interest.

Moreover, Drake testified she believed placement with Father was in Children's best interest because Mother was unable to discipline them. Grandfather also testified Mother had issues with Children's discipline, and he frequently had to act as Children's caregiver when Mother had custody of them. We appreciate our de novo review allows us to determine the weight to give to this testimony; however, we recognize the family court was in a superior position to assess the witnesses' credibility. *See Stoney*, 422 S.C. at 595, 813 S.E.2d at 487 (recognizing "a trial judge is in a superior position to assess witness credibility"). We agree with the family court that Father's willingness to put aside his differences with Grandparents for the benefit of Children was commendable.

We find Children's move from Greenville would significantly impact Father's relationship with them because he previously benefitted from week-to-week custody; however, we note this impact would be true for either parent. Although we agree with the family court's concerns regarding Father living in a one-bedroom apartment, we also agree that Father's testimony that he was on a waiting list for a three-bedroom apartment was credible.

As to Mother's argument the family court failed to consider she financially supported Children, the Original Order stated neither parent was to pay child support because they had week-to-week, divided physical custody, and Mother admitted she made more money than Father. Finally, as to her argument the family court failed to consider maternal grandmother's bonding with Children, we find Children and maternal grandmother enjoy a positive relationship; however, this bonding did not outweigh the other factors presented at the hearing.

After considering all of the evidence, we find granting Father primary physical custody was in Children's best interests; thus, we affirm the family court's order granting Father primary custody.

## III.    Attorney's Fees

Mother argues the family court abused its discretion in awarding Father attorney's fees.  She asserts the family court failed to discuss any of the *Glasscock* factors in determining whether to award Father attorney's fees.  We find Mother's arguments are unpreserved for appellate review.

In *Buist v. Buist*, our supreme court held that raising an alleged error regarding the award of attorney's fees for the first time in a Rule 59(e) motion was sufficient to preserve the issue for appellate review.  410 S.C. 569, 576, 766 S.E.2d 381, 384 (2014).

> A failure to object to the affidavit only indicates the party's acceptance of the affidavit as a reasonable representation of the amount of fees the opposing party owes his or her attorney, thus obviating any need for the opposing party to produce additional evidence or testimony on the matter.  The family court must still apply the *Glasscock* or *E.D.M.* factors to determine whether to award a fee, as well as the amount of the fee to award.

*Id*.  "If the party is not reasonably clear in his objection to the perceived error, he waives his right to challenge the erroneous ruling on appeal."  *Id.* at 575, 766 S.E.2d at 384.

Here, Mother challenged attorney's fees for the first time in her Rule 59(e) motion.  Ordinarily, this would be sufficient to preserve the issue for review, but here, the family court dismissed Mother's Rule 59(e) motion as untimely and never ruled on her attorney's fees argument.  Mother's failure to challenge the family court's dismissal of her Rule 59(e) motion on appeal renders her argument regarding attorney's fees unpreserved.  *See Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006) ("It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved.").  Therefore, we affirm the family court's award of $15,000 in attorney's fees to Father.

**CONCLUSION**

For the foregoing reasons, we affirm the family court's order denying Mother's motion for a continuance, granting Father primary physical custody of Children,

and ordering Mother to pay $15,000 in attorney's fees.  According, the family court's order is

**AFFIRMED.**[4]

**HILL and HEWITT, JJ., concur**.

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.